MARTHA BARKER, Respondent, *v.* JAMES SAVAGE and JAMES GORMLEY, Appellants.

To enter upon a street crossing in a city where the moving vehicles are numerous, and a collision with them likely to produce serious injury, without first looking in both directions along the street, to ascertain whether any are approaching, and, if so, their rate of speed, and how far distant they are from the crossing, is negligence.

Footmen have no right of way, at a crossing in a city street, superior to that of vehicles. Each have the right of passage in common, and in its use are bound to exercise reasonable care for their own safety, and to avoid doing injury to others who may be in the use of the right of way with them.

Where the plaintiff, a woman, sixty-four years old and lame, was crossing Third avenue, in New York city, at ten o'clock in the morning, and the driver of a cart, going at the rate of four miles an hour, when at a distance of twelve feet from the plaintiff, called to her, which call was heard by persons more distant from the cart than the plaintiff, but the plaintiff nevertheless kept on, and was run down and injured, — *Held*, that a charge by the court to the jury, to the effect that the plaintiff was only required to look ahead along the crossing, and if, in so looking, she discovered no obstacle, then she was not negligent in proceeding to cross, was erroneous.

(Argued February 22; decided March 21, 1871.)

APPEAL from a judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of the plaintiff.

The action was for damages resulting from a personal injury alleged to have been caused by negligence of the defendant Gormley, while driving a cart belonging to the other defendant.

The plaintiff was a woman, of over sixty-four years of age, and was lame, walking with a crutch. She was crossing Third avenue, the lower crossing at Forty-first street, at about ten o'clock in the morning, going from the west side. The defendant Gormley was driving his cart up the avenue, at the rate of about four miles an hour, going north on the east railroad track, and the plaintiff had not reached the east track, when

the driver, then about twelve feet from the plaintiff, shouted to her and pulled in his horse. The shout was heard by witnesses at a greater distance from the cart than the plaintiff was, but she paid no attention to it, and continued advancing, and, just as she was passing over the easternmost rail, the accident occurred. The plaintiff testified that she did not hear the driver, and accounted for it by the fact that she wore a hood.

On the close of the plaintiff's proofs, the counsel for defendants moved that plaintiff be nonsuited, on the ground that the evidence showed the driver to be free from negligence. This motion was denied, and defendants excepted. Another motion for a nonsuit was made after all the evidence was in, which was also denied. Exceptions were taken to two parts of the judge's charge; to the charge that a person crossing the street had the right of way, and a driver was bound to care for him; and to the charge that a person crossing the streets was not bound to look either way, but had the right to look straight before him, and it was the duty of the driver to keep out of his way and not come into collision with him. The jury found for the plaintiff, and the defendants appealed to the General Term, where the judgment was affirmed. The case at General Term is reported in 1 Lansing, 228.

*John K. Porter,* for the appellants, insisted that plaintiff's negligence was contributory. (*Steves* v. *Oswego R. R. Co.,* 18 N. Y., 423; *Ernst* v. *Hudson River R. R. Co.,* 39 id., 68; *Wilcox* v. *Watertown R. R. Co.,* id., 358, 368; *Grippen* v. *N. Y. Central R. R. Co.,* 40 N. Y., 51; *Nicholson* v. *Erie R. Co.,* 41 id., 542; *Baxter* v. *Troy and Boston Co.,* id., 502–505; *Harty* v. *Central Co.,* 42 id., 472.) That court's charge was erroneous. (*Cotton* v. *Wood,* 8 Common Bench, N. S., 571; *S. C.,* 98 Eng. Com. Law, 571.)

*E. D. Culver,* for the respondent.

GROVER, J. It was the legal duty of the plaintiff, in crossing the avenue, to exercise reasonable care to protect

herself from injury by a collision with vehicles that were traveling thereon. If the omission of such care by her contributed to the injury received, she could maintain no action therefor. In *Hartfield* v. *Roper* (21 Wend., 615), COWEN, judge, says: "That it is perfectly well settled that if a party injured by a collision on the highway, has drawn the mischief upon himself by his own neglect, he is not entitled to an action, even though he be lawfully in the highway pursuing his travels. (See also, *Rathbun* v. *Payne*, 19 Wend., 399). The only question usually arising in such cases is, as to what constitutes reasonable care. This question has often arisen and been determined in cases of collision with trains, where railroad tracks intersect a highway. In these cases, it has been held that reasonable care requires a vigilant use of the senses, of the eyes, and ears in looking and listening for trains, so as to be able to avoid any collision therewith, and that the omission of this care, if contributing to an injury, will preclude a recovery therefor. (*Nicholson* v. *The Erie Railway Co.*, 41 N. Y., 542; *Baxter* v. *Troy and Boston Co.*, id., 502; *Harty* v. *Central Co. of N. J.*, 42 N. Y., 472.) These cases show that reasonable care is such as prudent persons exercise, when contemplating the danger that may be encountered at such crossings. That danger arises from the great speed at which trains are usually run, and from the almost inevitable destruction arising from collision therewith. The same principle applies to street crossings in cities and road crossings in the country, reasonable care being such as the danger to be apprehended from collision, renders necessary for protection in case others in the exercise of their right of way, observe due and proper care on their part. In the application of this principle it is obvious that less care is required in crossing the streets and avenues of cities at the usual street crossings than at railroad crossings, for the reason that vehicles traveling thereon move at much less speed than railroad trains, and are, to a much greater extent, under the immediate control of those having charge of them. The constant active vigilance required for self preservation at railroad crossings is not

equally requisite at street crossings for this purpose, and is not therefore, at the latter crossings, required by reasonable care. Nevertheless these crossings are not free from danger to footmen, and at those most crowded there is serious danger to be apprehended. Reasonable care requires, in all cases, the exercise of vigilance proportioned to the danger encountered. To enter upon a street crossing in a city where the moving vehicles are numerous, and a collision with them likely to produce serious injury, without looking in both directions along the street to ascertain whether any are approaching, and if so their rate of speed, and how far from the crossing, would not only be the omission of reasonable care for his own safety, but an act of rashness. It is likewise the duty to look at street and road crossings for a like purpose, when there may be danger from approaching vehicles, although the travel may be quite trifling, for the reason that vehicles may be approaching so as to make it dangerous for footmen to proceed In impressing this degree of care upon footmen for their own safety, the law does not exonerate those in charge of the vehicles from the exercise of similar care, that is, such care as is proportioned to the danger to be apprehended to themselves, and especially to footmen, from collision. They are required not only to make a vigilant use of their senses to discover any one exposed to danger, but so to control the movement of their team as to avoid it to the extent of their power when discovered. Applying these principles to the present case, the court did not err in refusing to nonsuit the plaintiff upon the ground that the driver was free from negligence. The testimony shows that the driver not only could, but did in fact see the plaintiff some fifteen feet distant from her, and from the testimony, it is probable he could have seen her at a greater distance. Under these facts, and the other testimony, it was a proper question for the jury whether he could not have stopped his horse in time, or so have guided it as to have avoided running against her. If he could, his negligence, and the consequent liability of the defendant for the injury, so far as this question was concerned, was estab-

lished. The other ground upon which the motion was based presents a more difficult question. There was no evidence that the plaintiff looked at all in either direction for approaching vehicles, and the evidence tends to show that she entered upon the crossing and walked along upon it without taking any precaution for this purpose. That had she looked she could have seen the horse and cart in time to have avoided the danger. That for some unexplained reason she failed to hear the cry of the driver, made for the purpose of notifying her of her danger, although such cry was heard by persons at much greater distance than the plaintiff, and which would have been heard by her in time to have avoided the danger, if reasonably attentive to the danger of her situation. We have already seen that it was her duty to look along the street to see if it was safe to proceed. This she could have done without stopping. Turning the eyes along the street required no special effort, and if her failure to do this contributed to the injury, she had no right of recovery. I think the evidence presumptively proved this, and that, upon this ground, the plaintiff should have been nonsuited. But the court erred in charging the jury that the plaintiff was only required to look ahead along the crossing, and if, in so looking, she discovered no obstacle thereon, she was not negligent in proceeding to cross. In addition to this, it was her duty to look along the street in the vicinity of the crossing, upon both sides thereof, for a reasonable distance, to enable her to avoid danger from approaching teams. The exception taken to this part of the charge was sufficiently specific to raise this question. The court also erred in charging the jury that footmen had a priority of right of way, in crossing streets at the usual crossings, over teams traveling upon the street, and that it was the duty of the latter to avoid collision with persons so crossing the street. The effect of this instruction was to induce the jury to believe that a footman, having a prior right of way over a team, might venture upon the crossing, and, in so doing, was relieved from the exercise of such care for his safety as would have been required had the right of way of both been the same. If it

was not the design to convey this idea to the jury, this portion of the charge was wholly without meaning. This may have misled the jury. Neither footmen nor teams have any right of way superior to the other. They each have the right in common, and equally with the other, and in its exercise are bound to exercise reasonable care for their own safety and to avoid doing injury to any others who may be in the exercise of the equal right of way with them. (*Cotton* v. *Wood*, 98 Com. Bench, 568.)

The judgment appealed from must be reversed, and a new trial ordered; costs to abide event.

CHURCH, Ch. J., ALLEN, FOLGER, and RAPALLO, JJ., concurred; PECKHAM, J., concurred in result only on ground of error in charge; ANDREWS, J., took no part.

Judgment reversed, and new trial ordered; costs to abide the event.