# SUPREME COURT.

JANE CROWLEY, admx., &c., agt. GEORGE PALEN and another.

*Negligence — What is — Master and servant — Negligence of servant is negligence of master — What is constructive notice — Negligence a question for the jury.*

In an action brought by plaintiff for the wrongful killing of her son while crossing a public street in the city of New York by a horse driven by a person in the employment of the defendants, the horse taking fright from the passage of a train on the elevated railway, it appeared that the horse was taken to the same locality by the same driver on the preceding day and he then became frightened by the passage of a train on the elevated railway, the complaint was dismissed upon the sole ground that defendants had not been guilty of negligence :

*Held,* that when the horse became frightened by the passage of the train on the day preceding the accident, that was a circumstance from which it might well be inferred that he would be affected in the same manner whenever he should be taken to the same place again, and with that probability being known to the person who had charge of the horse, the point is by no means clear that he could be exonerated from the imputation of negligence when he exposed the horse to the same cause a second time.

What the law required from him was, that he should observe that degree of care and attention that experienced, careful and prudent persons would be expected to observe under similar circumstances when the entire risk of injury would rest upon themselves.

Whether this degree of care and attention was consistent with a second exposure of the horse to the object which had previously frightened him, was a question for the determination of the jury. It was a matter of inference to be deduced from the attendant circumstances, and what inference should be drawn it was the province of the jury to decide.

The fact that the horse was frightened on the preceding day while he was being driven by the defendants' servant was constructive notice to them of the occurrence itself. If he was negligent the law imputes the same degree of negligence to them whose servant he was.

Where the circumstances shown by the evidence are such that the jury may logically infer the existence of misconduct involving a want of reasonable care or negligence, the case should not be withdrawn from their consideration.

*First Department, General Term, October, 1882.*

*Before* DAVIS, *P. J.,* BRADY *and* DANIELS, *JJ.*

Motion by plaintiff for a new trial on exceptions, ordered to be first heard at the general term.

*Charles W. West* and *Elliot Sandford*, for plaintiff.

*George W. Van Slyke*, for defendants.

Daniels, *J.* — The plaintiff brought this action to recover damages for the wrongful killing of her son, for whose estate she was appointed administratrix.

He was killed in September, 1879, while crossing a public street in the city of New York. At that time he was thirteen years and eight months old. From the corner of Pearl and Ferry street he, together with three others started to cross to the north-east corner of Pearl street and Peck slip, diagonally opposite.

While they were so crossing the street a horse driven by a person in the employment of the defendants collided with the deceased and so injured him as to produce his death. This horse took fright from the passage of a train on the elevated railway, and he became unmanageable and from that circumstance ran against and over the deceased.

At the particular time when this occurrence took place, and immediately preceding it, there may have been no want of care on the part of the person managing or driving the horse, if this had been the first time when he was exposed to the effects upon him of trains passing upon the elevated railway, it might be that the dismissal of the complaint at the trial would be proper. But it was not, for the horse was taken to the same locality by the same driver on the preceding day and he then became frightened by the passage of a train on the elevated railway.

His account of what then took place is as follows: "Q. What took place in the conduct of the horse that day? A. The cars frightened him. Q. What were his actions being frightened? A. Plunged right ahead. Q. How far did he run on that occasion? A. About the length of himself below

Crowley agt. Palen.

the cross-walk in Peck slip, and about twice the length of himself after crossing the street in Ferry street. Q. Did he run fast or slow? A. Not very fast. Q. Did he jump? A. Yes. Q. Gallop? A. Yes.

The fact that the horse became frightened in this manner the day before the accident was a circumstance rendering it probable that he could not be taken into the same vicinity again without expecting a repetition of the same difficulty; and if that could not be done the inference is a plain one that he could not be used there without endangering the safety of persons equally entitled with the driver of this vehicle to make use of the street as the deceased was using it at the time of the accident. What might be apprehended did actually occur when this horse was next taken into the street. He became frightened and unmanageable, and from that cause the death of the deceased was produced. Whether persons lawfully using a public street should, in the exercise of reasonable care, be exposed to the risks of such accidents, would therefore appear under the circumstances to be rather a question for the jury than for the court to decide. If the driver could expose the horse to the same risk of fright on a second occasion without being chargeable with negligence in so doing, he might on any indefinite number of succeeding occasions, and in that way render him a continued source of danger to persons lawfully making use of the street. They would practically be deprived then of that protection which the law designs to secure by requiring the observance of due and proper care by persons in the use of public streets. And that would be as effectually done by taking the horse the second time into the same vicinity where the passage of the train would be expected to alarm him as though the already observed effect had on several other occasions been encountered. When the horse became frightened by the passage of the train on the day preceding the accident, that was a circumstance from which it might well be inferred that he would be affected in the same manner whenever he should be taken to

the same place again. And with that probability being known to the person who had charge of the horse, the point is by no means clear that he could be exonerated from the imputation of negligence when he exposed the horse to the same cause a second time. What the law required from him was that he should observe that degree of care and attention that experienced, careful and prudent persons would be expected to observe under similar circumstances, when the entire risk of injury would rest upon themselves. Whether this degree of care and attention was consistent with a second exposure of the horse to the object which had previously frightened him, was a question for the determination of the jury.

It was a matter of inference to be deduced from the attendant circumstances, and what inference should be drawn it was the province of the jury to decide. In the case of *Philadelphia Railroad Company, &c.,* agt. *Stinger* (78 *Penn.,* 219), a point very similar to this in its character was considered by the court, and it was then in effect determined that a horse easily frightened by a locomotive could not again be taken and exposed in the same manner without rendering the person controlling him chargeable with negligence. These persons were equally entitled to the safe and free use of the streets. The fact that one was driving a horse gave him no advantage or superior right whatever over him who passed on foot (*Barber* agt. *Savage,* 45 *N. Y.,* 191). Each was required to observe care for the purpose of avoiding risks or accidents, and when this horse was taken into the street with the probable apprehension by the driver that he would become frightened and unmanageable from the passage of the cars, a jury might very well conclude that he had omitted that care and attention which reasonable and prudent men would have exercised, and had consequently violated his obligation to the deceased. The fact that the horse was frightened on the preceding day while he was being driven by the defendant's servant was constructive notice to them of the occurrence itself (*Story on Agency* [4th ed.], sec. 140;

*Wharton on Agency*, sec. 177; *Bennett* agt. *Barber*, 76 *N. Y.*, 386).

If he was negligent, the law imputes the same degree of negligence to those whose servant he was. The safety and security of persons using the public streets of a city on foot requires that the law shall be carefully guarded and enforced against those using vehicles and needlessly exposing them to danger. The protection of life can be secured in no other manner, and where the circumstances, shown by the evidence, are such that the jury may logically infer the existence of misconduct, involving a want of reasonable care or negligence, the case should not be withdrawn from their consideration.

The evidence made out a case of this description and it should not have been, as it was, withdrawn from the jury because there was no want of care on the part of defendant's servant.

It is not necessary to consider the other propositions presented, whether the deceased was involved in fault, for the absence of fault upon his part, was assumed in the discussion and disposition of the case at the trial.

The verdict should be set aside and a new trial ordered, with costs to abide the event.

BRADY, J., concurs.

DAVIS, *P. J.* (dissenting).— This action is brought by the plaintiff, as administratrix, to recover damages for the death of the intestate, her son, a lad of about fourteen years of age.

On the trial it appeared that the intestate was killed by a horse and cart of the defendants, driven by their servant, who was engaged in carting leather for the defendants from their place of business to a place of shipment.

The horse and cart, it appeared, were crossing Pearl street, from Peck slip, under the New York Elevated Railroad. When about the length of the cart and horse from the railroad, a train was heard a short distance from the crossing which passed over the horse while he was under the track.

The horse was on a walk at the time, but was frightened by the cars and suddenly jumped into a gallop, running a short distance into Ferry street, and in doing so ran over and killed the intestate, who, with several other lads, was at that moment crossing diagonally from Ferry street to Peck slip. The driver did all in his power to hold the horse and shouted to the boys, but owing to the noise of the train, was not heard before the accident. He succeeded in stopping the horse a few lengths beyond where the boy was hit. A witness of the plaintiff, who was standing by and saw the horse start and the accident, and immediately ·after picked up the deceased, testified that the driver of the cart was in nowise to blame, but did all in his power to hold the horse.

There was no evidence that the horse was a vicious one or had been accustomed to run away, except that his driver testified that on the day before in driving under the railroad at the same place, as the train passed over him, the horse had suddenly jumped, but was stopped in going three times his own length. The ordinance of the city forbidding fast driving was put in evidence. At the close of the evidence the court was of opinion that the plaintiff did not give sufficient evidence of negligence to justify a verdict in his favor, and granted the defendant's motion to dismiss the complaint, to which exception was duly taken. Whereupon, on plaintiff's motion, exceptions were ordered to be heard in the first instance at the general term. We are of opinion that the disposition made of the case by the learned judge at circuit was correct. The evidence did not show a wrongful driving within the meaning of the ordinance, forbidding the driving of horses beyond a certain rate of speed in the city. They relate to intentional fast driving and not to runaways, which the driver seeks to, but is unable to prevent. There was no negligence shown in the management of the horse on the occasion of the accident, nor any proof of want of skill in the servant as a driver. The whole case rests upon the single fact that the horse had been frightened and jumped on the day before, and turns

Crowley agt. Palen.

upon the question whether what transpired at that time was sufficient to make it negligence on the part of the defendants to allow the use of the horse for their business purposes at or near the elevated railroad. It did not appear that either of the defendants knew of the incident of the day before, or that with notice of that incident, they had allowed the use of the horse to be continued.

But it may be assumed that the knowledge of their agent, under the circumstances, was their knowledge, and therefore it was necessary to determine whether what occurred on the day before was sufficient to require them to refrain from using that horse in the manner and place in which he was being used at the time of the accident.

The horse appears to have been seven or eight years old, and had been used as a cart-horse in the ordinary business of carting the plaintiff's commodities, and no proof was given of any previous indication that his use, if continued, would be dangerous, except the single incident mentioned. That proof only tended to show that the horse had jumped from sudden nervous excitement, occasioned by the train, but was immediately, and within three of his own lengths, brought down to a walk. And the fact tended more strongly to show that he was easily controllable and not dangerous, than to establish the contrary.

The most quiet horses accustomed to such trains are likely sometimes to be startled by the noise of the train to an extent equal or greater than that shown by the defendant's horse. But if they immediately yield to the restraint and control of the driver and become steady and quiet, it is rather evidence of the absence of viciousness or propensity to run away than otherwise.

To hold that upon such a fact alone the use of the business horses of the city must be abandoned or their owners subjected to damages for accidents that may be occasioned by a sudden fright without any fault or negligence on the part of the driver, would be carrying the rule beyond any of the cases.

If a horse be known to be in the habit of running away or to be vicious in any respect and liable for those reasons to do damage in the street, then the owner must use him at his peril and will be subject to liability for such injuries as his use causes.

That rule we think is not applicable to this case, and we are therefore of opinion that the exceptions should be overruled and judgment ordered on the verdict for defendants.

NOTE.— On the new trial judgment was rendered for plaintiff, from which no appeal has been taken.   [REP.