### GAUDIN *v.* VILLAGE OF CARTHAGE.

(*Supreme Court, General Term, Fourth Department.* February, 1891.)

MUNICIPAL CORPORATIONS—RUNAWAY TEAMS—OBSTRUCTIONS IN STREET.

In an action against a village for injuries sustained while crossing defendant's street, it appeared that a horse driven by a third person became frightened at a locomotive, and ran away. The wagon struck against a telegraph pole set in the street between the sidewalk and the drive-way, and threw the driver out, and the horse broke loose from the wagon, ran down the street, and ran over plaintiff. There was no evidence that the telegraph pole was improperly set, or was improperly maintained, where it was; and it appeared that plaintiff attempted to cross the street, which was much traveled, without looking for approaching teams. *Held*, that the evidence did not show any negligence on the part of defendant which was the proximate cause of defendant's injury.

Appeal from circuit court, Jefferson county.

Action by Andrew J. Gaudin against the village of Carthage. The complaint was dismissed, and plaintiff appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Kilby & Kellogg*, for appellant. *Porter & Walts*, for respondent.

MARTIN, J. We think this appeal should not prevail. The action was negligence. The only negligence alleged was that the defendant permitted a telegraph pole to remain standing in one of its streets at a point not to exceed 12 feet from a railroad track that was laid upon the street. The proof was that the pole stood between the sidewalk and traveled portion of the street, and from five inches to a foot from the walk. This pole was a part of a telegraph line extending from the station at Carthage to Jayville. The line was built and operated by the Carthage & Adirondack Railway Company. A railroad track was laid along the street, with the consent of the president and board of trustees of the village. If any special authority was given by the defendant or its officers to build the telegraph line, of which the pole in question formed a part, it was not proved. At the time of the injury one Hollister, a man 78 years of age, was engaged in carrying the mail from the depot

to the post-office' in the village of Carthage. His horse was timid, nervous, and somewhat afraid of the cars. At about 7 o'clock P. M. on that day he was at the station, obtained the mail, and started up Mechanic street, on which the pole in question stood. As the train passed along the street his horse became frightened, and commenced to run. He lost control of her, and she then ran against the pole in question. Hollister was thrown out, and the horse broke loose from the wagon, and ran about 60 rods to the place where the plaintiff was crossing the street, where she ran over him, and caused the injury of which he complained. The plaintiff's injury was sustained while he was crossing one of the principal and most generally traveled streets in the village, which had a population of several thousand inhabitants. He was on foot, and there was nothing to obstruct his view, or to prevent his hearing the approach of a horse or team passing over the street, except that it was in the evening. Notwithstanding this, so far as the proof shows, he attempted to cross without paying the slightest attention to his surroundings, or attempting to discover if any team or horse was approaching. Indeed, his own testimony was that he did not look down the street at all before he turned the corner, and that he does not recollect that he looked either up or down the street when crossing. To entitle the plaintiff to recover, he was bound to show that the defendant was negligent in permitting the pole in question to remain where it had been placed by those who constructed the telegraph line; that such negligence was the proximate cause of his injury; and that he was free from any negligence which contributed to such injury.

We do not find the evidence sufficient to show that the defendant omitted any duty it was required to perform which was the proximate cause of the plaintiff's injury. To allow a telegraph pole to be erected in the streets of a village or city is lawful. Hence the erection of this pole was not negligence *per se.* The pole stood between the sidewalk and the traveled part of the street. This was where such poles are usually placed. The distance of the pole from the sidewalk was not unusual, nor shown to be improper. There was no evidence that the pole was not properly set, or that it was not properly maintained, where it was. If it can be held that it was negligence for the defendant to permit this pole to remain at that place, it would be equal negligence to permit a hydrant or hitching-post to be placed, or trees to grow, between the sidewalk and the traveled portion of a street, as is frequently done. Again, can it be said that this pole, standing at that place, was the proximate cause of the plaintiff's injury? The horse had become frightened and unmanageable. The plaintiff was injured by the horse while running away. She was beyond the control of the driver before she came in contact with the pole. Would the jury have been justified in finding that the accident would not have happened but for the pole standing at that place? If not, then clearly the plaintiff could not recover, as the defendant would not be liable, unless the injury would not have occurred but for its presence there. Moreover, it is difficult to perceive how it could be found that the plaintiff was free from contributory negligence. His own testimony shows that he attempted to cross a street upon which there was a great amount of travel, without exercising any vigilance or care to protect himself from injury by approaching teams or horses. In *Barker* v. *Savage,* 45 N. Y. 194, in referring to the duty of a person crossing a street, it is said: "To enter upon a street-crossing in a city where the moving vehicles are numerous, and a collision with them likely to produce serious injury, without looking in both directions along the street to ascertain whether any are approaching, and, if so, the rate of speed, and how far from the crossing, would not only be the omission of reasonable care for his own safety, but an act of rashness. It is likewise the duty to look at street and road crossings for a like purpose, when there may be danger from approaching vehicles, although the travel may be quite trifling, for the reason that vehicles may be approaching so as to make it dangerous

for footmen to proceed." See, also, *Harnett* v. *Railroad Co.*, 49 N.Y. Super. Ct. 185; *Smith* v. *Smith*, 50 N. Y. Super. Ct. 503. While it may be that this rule has been somewhat modified by the doctrine of the case of *Moebus* v. *Herrmann*, 108 N. Y. 349, 15 N. E. Rep. 415, which holds that the duty imposed upon a wayfarer at the crossing of a street by a railroad track to look both ways does not, as a matter of law, attach to one about to cross a city street, still there is nothing in that case which tends to establish the doctrine that a person may heedlessly cross a street without exercising any vigilance or care to avoid collision with passing teams, and not be guilty of negligence. We are of the opinion that the evidence in this case was insufficient to establish negligence on the part of the defendant which was the proximate cause of the plaintiff's injury, or to establish the plaintiff's freedom from contributory negligence, and that the court properly dismissed the plaintiff's complaint. It follows that the judgment should be affirmed. Judgment affirmed, with costs.

HARDIN, P. J., concurred. MERWIN, J., concurred in the result.