OTTO SCHMIDT, Respondent, *v.* THE STEINWAY AND HUNTER'S
POINT RAILWAY COMPANY, Appellant.

Plaintiff was engaged in digging a trench in a street by the side of defend-·
ant's railroad track. A barrier of planks resting on sections of sewer
pipe was erected around the excavation. As one of defendant's cars
passed a piece of pipe fell into the trench, injuring plaintiff. In an
action to recover damages plaintiff's evidence was to the effect that
the car struck the pipe, causing its fall. Another car had just passed
without striking the pipe. It appeared that when this car approached
the excavation the driver stopped it, the conductor looked along the
track and thought there was room to pass, and the foreman of the
contractor who was making the excavation, signalled to the driver to
come on; he drove along at a walk, passed two of the sections of pipe
and struck the third. *Held*, that the evidence failed to establish negli-
gence on defendant's part, and that the submission of the question to the
jury was error.

(Argued January 27, 1892; decided March 15, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court, in the second judicial department, entered upon an
order made July 18, 1890, which affirmed a judgment in favor
of plaintiff, entered upon a verdict and affirmed an order deny-
ing a motion for a new trial.

The following is the opinion in full:

" This action was brought to recover damages for a personal
injury.

" The plaintiff was in the employ of one George H. Smith,
a contractor, and was engaged in digging a trench for a sewer
along Steinway avenue in Long Island City, parallel to and
by the side of the defendant's horse railroad in that avenue.
At about six o'clock in the afternoon of June 1, 1888, the
men engaged in excavating the trench were directed to erect
a barrier around the excavation. This was done by laying
planks across the trench, standing sections of sewer pipe on
either side and placing planks on top thereof to form a guard-
rail around the trench.

" The plaintiff remained in the trench and assisted in adjust-
ing the plank on which the sewer pipe was placed, which sub-
sequently fell. The plank was twelve inches in width, whilst
the pipe that was placed thereon was fifteen inches in diameter.

The pipe was placed within a foot and a half to two feet from the rail of the defendant's track. At this instant one of defendant's cars passed along the track, and the pipe fell into the trench upon the plaintiff, causing the injury for which this action was brought.

"It is claimed on behalf of the plaintiff that the car in passing struck the sewer pipe, causing it to tip over and fall, whilst on behalf of the defendant it is claimed that the car did not hit the pipe and that it toppled over in consequence of the vibration caused from the car, or from the caving of the earth on the side of the trench underneath the plank.

"The witness Preiser says that the car struck the pipe, whilst Policeman Burden testified that he was riding upon the car, sitting upon the front seat next to the sewer; that he heard no crash, felt no jar and did not notice that the car struck the pipe, but he saw the pipe topple over and fall.

"The only theory upon which the defendant could be charged with negligence is that the driver ran his car against the pipe, knocking it over.

"The evidence to which we have referred required the submission of that question to the jury, which found for the plaintiff, and we must, therefore, on this review, assume that the pipe was struck by the passing car.

"But was the company or the company's driver at fault? There is no substantial dispute as to the circumstances. The driver approached with his car to the place where the excavation commenced and then stopped. Three pipes were standing in line by the side of the excavation. A car had just passed them without hitting. The conductor of the car looked along the side and thought there was sufficient space to pass. The foreman of the contractor signalled the driver to come on, and thereupon he drove along with his horses upon a walk, passing two of the sewer pipes, but striking the third. All of the witnesses agree, including the plaintiff, that the car was stopped and did not advance until the signal was given, except the foreman who thinks that this car did not stop but that the one in advance did. He, however, does not claim to be certain and concedes that he made a motion with his arm for the car to come. The plaintiff had only worked two days and was

not much acquainted with the men. He says that he saw a big, tall man standing there and he gave commands for the cars to stop or start; that he had seen the man that day and the day before doing that. He further stated: 'He was not in our gang of workmen.' And the witness Preiser said he was not one of their workmen. All of the other witnesses agree that it was Moses Smith, the foreman, and Smith himself states that there was no one there to tell the cars to come on or stop but himself and that he generally did that by giving motions with his arm. It will be observed that whilst the plaintiff and witness Preiser state that the man who gave the signal to advance was not a fellow-workman of theirs, they do not say that it was not the foreman Smith. This is the only variance, if such it can be considered, in the evidence.

"It is quite apparent that the driver of the car proceeded upon the signal of the foreman of the contractor, under a supposition that the sewer pipes had been properly placed a sufficient distance from the track to allow his car to pass without hitting. It is said that he must have known that men were working in the trench; that he could have seen the pipe standing by the side of the sewer and that he should have taken other precautions to avoid the accident; that he should have measured the distance and made sure that his car would not hit the pipe.

"This view appears to have been taken by the General Term, the presiding judge saying that the company owed extreme vigilance in the management of its cars and this duty was increased by the excavation. We do not, however, understand the rule to be as broad as there stated.

"A careful man is guided by a reasonable estimate of probabilities. His precaution is measured by that which appears likely in the usual course of things. The rule does not require him to use every possible precaution to avoid injury to others. He is only required to use such reasonable precautions to prevent accidents as would ordinarily be adopted by careful, prudent persons under like circumstances. (*Barker* v. *Savage*, 45 N. Y. 191; Ray on Negligence, 133.)

"Had the pipe stood in front of the defendant's car so that the driver could have seen that the car must necessarily strike •

it, a different question would have been presented. The pipe was not so placed. It was negligently placed by the employes of the contractor so near the track that it was hit by the car, but the driver standing upon the platform, looking at it from that position, could not see that his car would hit. He proceeded under the signal of the foreman with the supposition that the employes of the contractor had placed it a sufficient distance to permit the passage of his car, and, under the circumstances, it does not appear to us that it was necessary for him to stop and measure before proceeding, and that he is chargeable with negligence because of his failure so to do. He but did what every other man would have done under like circumstances.

"We are, therefore, of the opinion that the evidence failed to establish negligence on the part of the defendant, and consequently the judgment should be reversed and a new trial granted, with costs to abide the event."

VANN, J. I dissent upon the ground that it was for the jury to say whether the driver exercised the care required by the circumstances when, after coming to a full stop, he drove on "pretty fast—at a good gait," standing in the middle of the platform, without looking to see or getting in a position where he could see whether his car would strike the section of sewer pipe, or whether there was anyone in the trench who might be injured, or taking any precaution to prevent injury to those engaged in making the excavation.

*George W. Stephens* for appellant.

*M. L. Towns* for respondent.

HAIGHT, J., reads for reversal.

All concur, except VANN, BRADLEY and BROWN, JJ., dissenting.

Judgment reversed.