### HEALEY v. EHRET.

(Supreme Court, Appellate Division, First Department. June 9, 1899.)

PEDESTRIANS—INJURY BY VEHICLES—CONTRIBUTORY NEGLIGENCE.

Contributory negligence is a question for the jury, where a woman desiring to cross an avenue, at a street crossing, and seeing a team proceeding diagonally across the avenue, part of a block below, at an angle that, if continued, would have caused no danger, started across with one child in her arms, and plaintiff and another child, each 3½ years old, just in front of her, though the team, the driver not having control of the reins, changed its direction, when 10 or 15 feet from the pedestrians, proceeding directly up the avenue, and struck plaintiff.

Appeal from trial term, New York county.

Action by Kate Healey, an infant, by Martin Healey, her guardian ad litem, against George Ehret. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

Ernest M. Welch, for appellant.
Grant C. Fox, for respondent.

McLAUGHLIN, J. The plaintiff seeks in this action to recover damages for personal injuries sustained on December 19, 1895, through the alleged negligence of the defendant. The questions pre-

sented on this appeal are, was the defendant guilty of negligence, and was the ruling made at the close of the plaintiff's case, dismissing the complaint on the ground of contributory negligence on the part of the plaintiff's custodian, right? In determining these questions, the plaintiff is entitled to the most favorable inferences to be drawn from the testimony which tend to support her cause of action. Even though the testimony were susceptible of different inferences, these would be for the jury, and not for the court. The testimony shows that at the time of the accident the infant plaintiff·was about $3\frac{1}{2}$ years old, and was in charge of her aunt, Mrs. Mellarky, to whose care she had been intrusted by her mother. Mrs. Mellarky also had with her at the time two of her own children,—one 16 months old, whom she carried in her arms, and the other a child of the plaintiff's age. Mrs. Mellarky, having these three children, and being on the southeast corner of 108th street and 2d avenue, desired to cross the street from that point to the west side of the avenue on the southerly crosswalk. Before leaving the sidewalk, Mrs. Mellarky observed a brewery wagon belonging to the defendant, which was the only vehicle in sight on the avenue at that time, proceeding from a point on the west side of 2d avenue, between 107th and 108th streets, diagonally towards the east side of the avenue. Apprehending no danger from the wagon, she permitted the plaintiff and .her own child to start ahead of her, she keeping about two feet behind them; and while thus proceeding, and when the children had reached the car track, the wagon (at that time being some 10 or 15 feet away, the horses proceeding at a trot) changed its direction, and instead of continuing, as it might have done, and as Mrs. Mellarky supposed it would, across to the east side of the avenue, it turned on the uptown railroad track going north, and reached the place where the children were, and the horse on the left or west side of the wagon struck the plaintiff, and threw her down, and the brewery wagon passed over her, the wheels crushing and fracturing her right arm, and inflicting other injuries. It was further shown that the change in the direction of the horses and wagon was sudden, and without warning, the horses swinging in on the track, and proceeding at a trot in approaching the crosswalk; the driver having permitted the reins to rest on the horses' backs. One of the onlookers, seeing the danger, called out to the driver when he was at least 10 feet away from the children on the crosswalk; but, if the testimony is to be credited, the driver either did not hear, or did not care if he did hear, because no effort was made to slacken the speed of the horses, or to check them with the reins, and they got some distance beyond where the child was run over before they were stopped by strangers who ran after the wagon, and took the horses by the head. Whether the driver was conscious of what had been done does not clearly appear; the inference from the testimony of one, at least, of the witnesses being that he was in a dazed, sleepy, or drunken condition. It is evident, from this showing of the plaintiff, that there was sufficient to go to the jury upon the question of the driver's negligence; and that view was apparently shared by the learned trial judge, his ruling being based upon the ground of the contributory negligence on the part of Mrs. Mellarky, which was im-

putable to the infant plaintiff. Considering the tender age of the child, the court was right in holding that she was non sui juris, and though not, therefore, capable of being guilty of negligence herself, her custodian's negligence, if proven, was imputable to her. It therefore remains to determine whether the course pursued by Mrs. Mellarky in attempting to cross the street under the existing conditions can be held, as matter of law, to have been negligent. She saw the wagon while it was proceeding from the west side diagonally across towards the southeast corner of the avenue, and from the position which she and the children reached near the track in the middle of the avenue it is evident that, had the wagon gone in the direction in which it was headed, to the east side of the avenue and northerly, she and the children would have passed in safety. She was not guilty of negligence, as matter of law, in failing to anticipate the change of direction of the horses and the wagon. There was not even a lack of judgment on her part. The accident was due to the sudden change in the direction taken by the horses attached to the wagon and the speed with which they approached the crossing. They were not under the driver's control when they reached the place where the children were. It is true that Mrs. Mellarky had not the children, as she could not very well have had them, both by the hand, because she had one child in her arms. She testifies that they were not more than two feet in front of her. She is supported in this by her further statement that she was close enough to them to be able to seize her own child, and draw it back to a place of safety, but that the time was not sufficient to permit her also to reach her niece who was injured. Upon the defendant's view of the law applicable to pedestrians and vehicles, a wagon would be entitled to the unrestricted use of the entire roadway, and a person in Mrs. Mellarky's position would have to wait until every vehicle using the street had passed up or down before she might, without negligence, venture to cross. It has frequently been held that, as between pedestrians and vehicles, the former has not priority in the use of the streets, but each, in using them, has equal or reciprocal rights and duties. Having observed the brewery wagon and the direction in which it was headed, Mrs. Mellarkey was not guilty of negligence, as a matter of law, in concluding that the driver would not, without any regard to her presence on the crosswalk with the two children, permit the horses suddenly and without warning to change their direction, and approach the crosswalk at a pace so rapid that it was impossible for her to remove the children, or reach with them a place of safety.

The contention that she was guilty of negligence in not having the children by the hand in crossing is disposed of by what was said by Van Brunt, P. J., in Coghlan v. Railroad Co. (Sup.) 39 N. Y. Supp. 1098:

"It cannot be held, as matter of law, that a person who is in the street with a child of immature years is bound, every instant of the time, to have his hands actually upon the child, restraining its movements."

Nor do we think the case upon which so much reliance is placed by the respondent (Barker v. Savage, 45 N. Y. 191) is in point or con-

trolling. That case, upon its facts, is clearly distinguishable from the one at bar, as shown by the language of the opinion:

"There was no evidence that the plaintiff looked at all in either direction for approaching vehicles, and the evidence tends to show that she entered upon the crossing, and walked along upon it without taking any precaution for this purpose; that, had she looked, she should have seen the horse and cart in time to have avoided the danger; that for some unexplained reason she failed to hear the cry of the driver, made for the purpose of notifying her of her danger, although such cry was heard by persons at much greater distance than the plaintiff, and which would have been heard by her in time to have avoided the danger, if reasonably attentive to the danger of her situation. We have already seen that it was her duty to look along the street to see if it was safe to proceed. This she could have done without stopping. Turning the eyes along the street required no special effort, and, if her failure to do this contributed to the injury, she had no right of recovery."

Here the person in whose care the child was stopped at the corner before proceeding on the crosswalk, and saw the position and direction of the brewery wagon, and not only was she not warned, but the evidence is that the driver was the one that was warned, and that, heedless of such warning, he continued on his course.

We think that the disposition made below was wrong; that, upon the facts appearing on the plaintiff's evidence, the question of contributory negligence was one of fact for the jury; and that therefore the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.