ALOIS KNAPP, Respondent, *v.* WILLIAM M. BARRETT, as President of Adams Express Company, Appellant.

Negligence — pedestrians — duty of person crossing city street to look before attempting to cross — erroneous charge that such person is not bound to look at all.

1. It is the duty of a pedestrian in crossing a city street to use his eyes and thus protect himself from danger.   The law does not say how often he must look, or precisely how far, or when or from where, and whether he is negligent in going forward will be a question for the jury.   If he has used his eyes, and has miscalculated the danger, he may still be free from fault; but it may not be said that he is not bound to look at all.

2. Where plaintiff, who was old and feeble, was struck by defendant's wagon and injured as he started to cross a street after alighting from a car, and the evidence is conflicting as to whether he looked for approaching wagons, or failed to look and so walked

directly in front of the horse, and, also, as to whether defendant's wagon was approaching slowly or at speed, the case was properly submitted to the jury; but it was reversible error for the trial court to charge, in effect, that even if the plaintiff left the car without looking where he was going, they might still acquit him of negligence. To escape the consequences of such negligence, he must prove that, even if he had looked, the accident would still have happened.

*Knapp* v. *Barrett*, 160 App. Div. 877, reversed.

(Argued October 25, 1915; decided November 16, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 10, 1913, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. Clyde Sherwood, William B. Davis* and *Amos H. Stephens* for appellant. The court erred in charging the jury that the plaintiff was under no legal obligation to look. (*Peterson* v. *Ballantine*, 205 N. Y..29; *Zucker* v. *Whitridge*, 205 N. Y. 50; *Reed* v. *Met. St. Ry. Co.*, 180 N. Y. 315; *Volosko* v. *Int. St. Ry. Co.*, 190 N. Y. 206; *Lyons* v. *Avis*, 5 App. Div. 193; *Hennessey* v. *F. S. S., etc., Ry. Co.*, 103 App. Div. 384; *Fuller* v. *Dederick*, 35 App. Div. 93; *McKinley* v. *Met. St. Ry. Co.*, 91 App. Div. 153; *Dolfini* v. *R. R. Co.*, 178 N. Y. 1; *Mastin* v. *City of New York*, 201 N. Y. 81; *Mead* v. *Huber Brewery*, 104 App. Div. 10; *Larner* v. *N. Y. Transfer Co.*, 149 App. Div. 193; *Perez* v. *Sandrowitz*, 180 N. Y. 397; *O'Reilly* v. *Davis*, 136 App. Div. 386.)

*Thomas G. Prioleau* and *Charles Graeser* for respondent. The charge of the court was fair and correctly set forth the law applicable to the facts of the case. (*Caldwell* v. *New Jersey Steamboat Co.*, 47 N. Y. 282; *Butler* v. *Gazette Co.*, 119 App. Div. 768; *Moebus* v. *Herrman*,

108 N. Y. 349; *Moody* v. *Osgood*, 54 N. Y. 488; *Reens* v.
*M. & E. Pub. Co.*, 10 Misc. Rep. 122; 150 N. Y. 582;
*Hickman* v. *Schimper*, 125 App. Div. 216; *Hodges* v.
*Westcott Express Co.*, 39 App. Div. 546.)

CARDOZO, J.  The plaintiff was struck by the shaft of
the defendant's wagon, and suffered injuries for which
he sues.  He left a street car at the junction of Watts
and West streets in the city of New York.  The rear end
of the car was about thirty feet from the crosswalk.
Another passenger, noticing that he was old and feeble,
helped him to the ground.  He stepped from the rear
platform and the left side of the car, and began to walk
to the south side of the street.  We may assume, in view
of his infirmities, that he moved slowly.  He says that
before starting he looked both ways, and that no vehicles
were in sight.  He took three or four steps, and while stand-
ing in some deep snow was struck by an express wagon,
which came from the west.  The horse, it is said, was
"galloping at a mad rate."  That is the plaintiff's ver-
sion.  The defendant's witnesses tell a different story.
They say that when the plaintiff was about a foot and a
half away from the car, the horse was only a few feet to
the west, and that the plaintiff with his overcoat collar
turned up and his hat pulled down over his eyes, walked
directly in front of the horse, then going at a moderate
trot.  The case, we think, was for the jury, and the
court did not err in refusing to dismiss the complaint.

The defendant insists, however, that there was error in
the charge, and we are constrained to hold that this is
true.  The trial judge said to the jury: "This plaintiff
was under no duty to do any particular thing or to abstain
from any particular thing.  He was, however, under a
duty to exercise ordinary care for his own safety.  The
law did not require that he should look at all — the law
did not, you understand, gentlemen; but if he tells you
what he did, and, among other things, that he failed to

look, for instance, although he does not say that, you have a right to consider the circumstance. In other words, you have a right to consider all the circumstances, and while the law does not prescribe that he has to do anything at all, the law does not provide that he should do any particular, specific thing, only in general terms that he should exercise ordinary care for his own safety, and that if he is injured through a failure to exercise ordinary care for his own safety, as a cause of the accident, then he cannot recover. Now, in this steam railroad case the law says that every man before he steps on a railroad track must look and listen. That is in cases where it is a steam railroad; so that the law says there that he must look and listen. But here in New York city, where we have no steam railroads in the streets ordinarily, no man need look and listen as a matter of law; but that does not mean that he should not do it as a matter of fact, gentlemen. When I say that the law requires it, that is one matter; the law may not, but ordinary care may, and what the facts are you must determine; and whether, as a matter of fact, he was negligent because he acted as he did under the circumstances, or failed to act as he failed to act, is for the jury to determine; but, as I have stated to you, gentlemen, remember I am only charging you with respect to what the law requires. The law requires of no man the doing of any specific act under any circumstances, such as were present here." The defendant's counsel excepted to these instructions, but the trial judge refused to change them, and, indeed, restated them: "I refuse to charge," he said, "that the plaintiff was bound to look as a matter of law, or to do anything as a matter of law, gentlemen; but I do not say that he ought not to look as a matter of fact. That is for you, gentlemen, to determine."

We think that under the decisions in this state these rulings were erroneous. The jury were told in effect that even if the plaintiff left the car without looking

where he was going, and then walked blindly in the path of the wagon, they might still acquit him of negligence. The law, we think, is otherwise. A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger (*Barker* v. *Savage*, 45 N. Y. 191). The law does not say how often he must look, or precisely how far, or when or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again. The law does not even say that because he sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward, will be a question for the jury. If he has used his eyes, and has miscalculated the danger, he may still be free from fault (*Buhrens* v. *Dry Dock, E. B. & B. R. R. Co.*, 53 Hun, 571; 125 N. Y. 702). But it is a very different thing to say that he is not bound to look at all. We have repeatedly held that one who crosses a city street without any exercise of his faculty of sight, is negligent as a matter of law (*Barker* v. *Savage, supra ; Peterson* v. *Ballantine & Sons*, 205 N. Y. 29; *Perez* v. *Sandrowitz*, 180 N. Y. 397; *McClain* v. *Brooklyn City R. R. Co.*, 116 N. Y. 459, 470; *Reed* v. *Met. St. Ry. Co.*, 180 N. Y. 315; *Volosko* v. *Interurban St. Ry. Co.*, 190 N. Y. 206; *Zucker* v. *Whitridge*, 205 N. Y. 50; *Mastin* v. *City of New York*, 201 N. Y. 81). To escape the consequences of such negligence, he must prove that even if he had looked, the accident would still have happened. He is not entitled to damages where it appears that "unconscious and unobservant of the situation, he walked into the approaching team" (*Perez* v. *Sandrowitz, supra*, 400).

We are referred to *Moebus* v. *Herrmann* (108 N.Y. 349) and *Baker* v. *Close* (204 N. Y. 92) as sustaining a ruling that the plaintiff was not negligent as a matter of law, even though he walked blindly in front of the defendant's wagon. They give no support to so extreme a view. It

is true that the rule applicable to steam railroads is not applicable to other crossings. The traveler approaching such a railroad is required "to make vigilant use of his eyes and ears to ascertain if there is an approaching train," and "if by such use of these faculties, while approach-ing, the vicinity of such a train may be discovered in time to avoid a collision, the omission to exercise them is contributory negligence" (*Davis* v. *N. Y. C. & H. R. R. R. Co.*, 47 N. Y. 400; *Judson* v. *Central Vt. R. R. Co.*, 158 N. Y. 597). There are many cases where it might be possible by a vigilant use of the faculties of sight and hearing to discover an approaching wagon in time to avoid a collision, and yet the traveler would not be chargeable with contributory negligence for failing to discover it. The vigilance, in brief, does not have to be so extreme and constant. One may often look when crossing a city street without turning one's head at all. A sufficient space to give a reasonable assurance of safety may be at all times within one's range of vision. Some use of one's faculties, however, there must be, and it is error to instruct a jury that one who has made no use of them whatever may still be free from fault. What was said in *Moebus* v. *Herrmann* and in *Baker* v. *Close* must be read in the light of the facts of those cases. In *Moebus* v. *Herrmann* the court was dealing with an accident to a child of seven years, at the crossing of the street, and all that the court held was that the degree of vigilance to be exacted might be affected by the situation and surrounding circumstances. In *Baker* v. *Close* the evidence was that the plaintiff had looked up and down near the middle of the street, but had failed to look again before reaching the curb, and the question was whether there was any evidence to take the case to the jury. These facts appear more fully in the report of the case at the Appellate Division (137 App. Div. 529). This court said in effect that the extent to which one must look may not be defined in advance by any hard and fast formula,

but must be measured by the circumstances of the particular case. Since *Moebus* v. *Herrmann* and *Baker* v. *Close* were decided, there have been many cases in which it has been held that a traveler's failure to use his faculty of sight at all is contributory negligence as a matter of law. If the traveler may rely to some extent on the assumption that care will be taken by the driver, the driver may also rely to some extent on the assumption that care will be taken by the traveler.

The judgment should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, HOGAN and POUND, JJ., concur.

Judgment reversed, etc.