MORRIS KUPPERBERG, Appellant, *v.* AMERICAN DRUGGISTS SYNDI-
CATE, INC., Respondent.

First Department, March 13, 1925.

Motor vehicles — action to recover for injuries suffered when plaintiff was struck by defendant's automobile — plaintiff was crossing street at intersection — plaintiff's evidence showed that accident happened on clear day, that no other pedestrians or vehicles were in sight, that defendant's automobile was 160 feet away when plaintiff started to cross street, and that he was struck when near center of street — defendant's evidence was that defendant's chauffeur did not see plaintiff or any one else and that plaintiff rushed across street and ran into automobile — case should have been submitted to jury on questions of negligence and contributory negligence.

In an action to recover damages for injuries suffered by the plaintiff, when he was struck by defendant's automobile, it was error for the court to dismiss the complaint at the close of the case, for the questions of defendant's negligence and plaintiff's contributory negligence should have been submitted to the jury, since it appears that plaintiff's evidence showed that the accident happened on a clear day while the plaintiff was crossing a street at a street intersection; that there were no other pedestrians or vehicles on the street at that time; that defendant's automobile was about one hundred and sixty feet away when plaintiff started to cross the street; that as plaintiff approached the first street car track he saw that the defendant's automobile was approximately sixty feet from him; that he was struck as he reached the first street car track, a distance of approximately twenty-two feet from the curb; and that the defendant's chauffeur changed the course of the automobile so that it advanced directly toward the plaintiff and failed to give any warning signal of its approach, while the defendant's evidence, given by the driver of the automobile, was to the effect that the driver saw no one at the street intersection as he approached it, and did not see the plaintiff until after he had struck him, and testimony was given by another witness for the defendant that the plaintiff rushed across the street and ran into the defendant's automobile, which witness testified that the plaintiff was crossing the street in the opposite direction from that which the plaintiff testified. It appears also that the testimony of the last witness was contrary to a statement signed by him a short time after the accident.

The plaintiff was not bound to anticipate negligence on the part of defendant's chauffeur, nor to anticipate that the chauffeur would change the course of the automobile in such a way as to drive it against the plaintiff without notice or warning of its approach, and the plaintiff fulfilled every duty imposed by law upon him when he twice looked at the approaching automobile and judged its position.

APPEAL by the plaintiff, Morris Kupperberg, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 10th day of April, 1924, upon the dismissal of the complaint upon the merits by direction of the court at the close of the entire case.

*Gilbert D. Steiner* [*Murray G. Jenkins* of counsel], for the appellant.

*Robert H. Charlton,* for the respondent.

BURR, J.:

The action is brought to recover damages for personal injuries sustained by plaintiff. At the conclusion of the plaintiff's case defendant's counsel moved to dismiss on the ground that no negligence had been shown and the plaintiff had failed to establish facts sufficient to constitute a cause of action or to substantiate the allegations of the complaint. The court reserved decision on this motion. At the conclusion of the entire evidence, this motion was renewed and granted.

Plaintiff's counsel asked to have the case submitted to the jury on the question of negligence and freedom from contributory negligence, which motion was denied. Subsequently a judgment was entered reciting that the complaint had been dismissed " upon the merits."

On July 26, 1922, between ten and eleven o'clock in the morning, the plaintiff had walked in a southerly direction on the west side of Southern boulevard in the borough of The Bronx, city of New York. Upon reaching the northwest corner of the intersection of One Hundred and Forty-first street and Southern boulevard, the plaintiff desired to cross Southern boulevard, to go to the garage on the southeast corner of One Hundred and Forty-first street and Southern boulevard where his car was stored. Before leaving the curb he " looked up and down." At that time there was no traffic at or near the intersection of One Hundred and Forty-first street and the intersecting space was absolutely free of pedestrians and vehicles. Coming south in a southerly direction around a bend in Southern boulevard and the south-bound or most westerly track was the defendant's Ford sedan.

The plaintiff, having observed the approach of this automobile at a distance of 150 or 160 feet away, formed the opinion that he could get across. He went out into the street and began to walk across at a rate of speed which he described as " medium, not slow and not fast. I was walking." The day was " nice " and " clear."

The distance between the west curb of Southern boulevard and

the westerly rail of the south-bound car track was twenty-two feet, eight inches.

After plaintiff had walked about sixteen or eighteen feet away from the curb — the northwest curb — which brought him to a point about five or six feet from the car track, he looked to the north again and observed that the automobile had approached to a distance of about from sixty to seventy feet. With no other vehicle in the vicinity, with his own person in plain view in the bright, clear day, he kept on walking until he reached the south-bound car track, a distance of five or six feet from where he had looked the second time and when he reached the car track was struck on the left side, the side nearest the north, and thrown to the ground. It thus appears that the automobile traveled about sixty or seventy feet while Kupperberg walked about six feet. Although obviously the automobile must have changed its course to travel from the space between the south-bound car track and thus swerved directly towards plaintiff, no sound of horn, or bell, or whistle was given by the chauffeur. After knocking Kupperberg down the automobile passed from twelve to fifteen feet beyond him.

The defendant's automobile was a Ford sedan driven by one Weinstein, a salesman in the employ of the defendant, and who had a license as a chauffeur for only about three months before the accident. On the occasion of the accident Weinstein said he was just starting to work, planning to see a prospective customer at One Hundred and Twenty-third street and Lexington avenue at about noontime.

Weinstein said that upon approaching the intersection of One Hundred and Forty-first street and Southern boulevard there was nothing to his right or left nor in front of him. He said, " I looked all around," but saw " nothing at that time." The street was open as far as he could see. There was no pedestrian that he saw. His first intimation of anything out of the ordinary was feeling a thump on his car as though a boy " threw a rock or something " against it. At the same instant there was a shout, " Hey." The chauffeur paid no attention to the thump, but he stopped when he heard the shout of " Hey." He immediately got out of the machine and saw the plaintiff's body a little off the south-bound track directly behind his car.

Up to the time that he got out and first saw the plaintiff lying about twelve feet behind his car, he had not observed him at all. Not observing anybody anywhere around the intersection of One Hundred and Forty-first street and Southern boulevard, the defendant's chauffeur said he saw no reason for blowing a horn and so he did not blow one.

The defendant called one Mooney, who was a bricklayer by occupation. He testified that while walking east on the south side of One Hundred and Forty-first street, and approaching Southern boulevard, he saw the plaintiff, " a pretty big, fat man," " dash across the street " from the southeast corner and run directly against the defendant's south-bound automobile. This was in the opposite direction to that which plaintiff testified he was walking. He testified when the plaintiff ran against the left side of the automobile, he fell down. He said when he saw this happen, he hollered, " Hey." The automobile then stopped fifteen or twenty feet beyond the point where Kupperberg fell.

Mooney was cross-examined with regard to a statement that had been procured from him by a clerk in the office of plaintiff's attorney. He denied, in substance, that he had said the things which were contained therein over his signature. The statement was received in evidence, and is practically a complete corroboration of the plaintiff's own version of the accident, particularly as to the direction in which plaintiff was walking. In the statement Mooney said that he saw the plaintiff leave the west side of Southern boulevard and cross from the west towards the east and while so doing and when near the car tracks saw the automobile strike and knock him down and that the automobile then went fifty feet beyond the point of the accident.

Philip McGinness testified that this statement was obtained from Mooney at his home on the 28th or 29th day of July, 1922, which would be from two to three days after the accident. He said that his method of taking this statement was to ask Mooney questions. McGinness himself wrote the exhibit and then gave it to Mooney to read. Mooney took the statement in his hands and looked it over about three minutes and signed it.

The other witnesses called in the case were not called on as to the facts of the accident.

The plaintiff had a right to assume that a large, bulky man like himself would be plainly visible to the operator of a machine, particularly under circumstances where he seems to have been the only object out in the street. The automobile was plainly visible to him and conversely he must have been plainly visible to the operator.

The rights of the plaintiff and of the defendant's chauffeur at the street crossing were equal. The plaintiff was within his rights in proceeding across the street instead of waiting for the defendant's car to pass and no accident would have occurred had the defendant's chauffeur kept the car under proper control. (*Baker* v. *Close,* 204 N. Y. 92; *Barker* v. *Savage,* 45 id. 191; *Birkett* v.

*Knickerbocker Ice Co.,* 110 id. 504; *Murphy* v. *Orr,* 96 id. 14; *Rush* v. *Bauland Co.,* 82 App. Div. 506; *Rothfeld* v. *Clerkin,* 98 Misc. 192; *Knapp* v. *Barrett,* 216 N. Y. 226; *O' Neill* v. *Ewert,* 189 App. Div. 221.)

Under the foregoing authorities, it was clearly for the jury to say whether or not the defendant's chauffeur was unobservant and whether he failed to exercise that degree of care which the law places upon the operator of a vehicle. In taking away the plaintiff's right to have this matter passed upon by the jury and in arbitrarily dismissing the complaint on the merits at the conclusion of all the evidence, the court disregarded the plaintiff's own story in its entirety and committed error which requires reversal. The plaintiff was entitled to have the question of freedom from contributory negligence submitted to the jury. (*O' Neill* v. *Ewert,* 189 App. Div. 221.)

Plaintiff was not bound to anticipate negligence on the part of the chauffeur, nor was he bound to anticipate that the course of a machine would be changed in such a manner as to be driven against his person without notice or warning of its approach toward him. He fulfilled every duty imposed by the law upon him in twice looking at the approaching automobile and judging of its position. According to the foregoing authorities he did more than was required of him, as matter of law. He was not even obliged to look a second time.

In *Knapp* v. *Barrett* (*supra*) the Court of Appeals said (at p. 230): " A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger (*Barker* v. *Savage,* 45 N. Y. 191). The law does not say how often he must look, or precisely how far, or when or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again. The law does not even say that because he sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him; and whether he is negligent in going forward, will be a question for the jury. If he has used his eyes, and has miscalculated the danger, he may still be free from fault (*Buhrens* v. *Dry Dock, E. B. & B. R. R. Co.,* 53 Hun, 571; 125 N. Y. 702)."

It follows, therefore, that not only was the question of the defendant's negligence one for the jury, but also the question of the plaintiff's freedom from contributory negligence.

Under all the circumstances disclosed by the proof every essential element in the case was in dispute and required solution by the jury. The failure of the court to permit the jury to perform its functions constitutes reversible error.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., MERRELL, FINCH and MARTIN, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.