**Abe ROTSTAIN, Respondent,**

v.

**Timothy D. LILLIS, Appellant.**

**No. KCD 28224.**

Missouri Court of Appeals, Kansas City District.

April 4, 1977.

Motion for Rehearing and/or Transfer Denied May 2, 1977.

Application to Transfer Denied June 14, 1977.

Walter K. Disney, Kansas City, for appellant.

J. Michael Cronan, Jackson & Sherman, Kansas City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW J. HIGGINS, Special Judge.

Appeal from judgment in favor of Abe Rotstain, a pedestrian, in action for damages for personal injuries sustained when struck by an automobile operated by Timothy D. Lillis. The questions are whether there was an absence of a proper guardian ad litem for defendant as to void the judgment, and whether plaintiff was contributorily negligent as a matter of law. Affirmed.

Appellant contends respondent "obtained a void judgment because there was no proper guardian ad litem appointed for [defendant] during discovery  *  *  *  and upon whom [plaintiff's] Second Amended Petition could be served."

On October 2, 1971, plaintiff filed his petition for damages against Timothy D. Lillis.

On May 3, 1972, he made application for appointment of a guardian ad litem alleging: "Defendant Timothy D. Lillis is represented by attorney  *  *  *.  The defendant admits that he is a minor but has not taken it upon himself to have a guardian appointed for him. Since the minor is above the age of 18, he can apply for the appointment of a guardian ad litem. Since he has not so applied, the plaintiff requests that the Court appoint his father, James Lillis or a member of the Missouri Bar practicing in Jackson County to act as guardian ad litem for the defendant, * * *."

On May 10, 1972, the court entered the following: "Having considered the written application of the plaintiff and it appearing that the minor defendant has failed to apply for the appointment of a guardian ad litem, IT IS HEREBY ORDERED  *  *  * that James Lillis be and is hereby appointed guardian ad litem for the minor defendant herein."

On May 30, 1973, plaintiff filed his Second Amended Petition for damages

naming Timothy D. Lillis and James P. Lillis, his father, as defendants.

On June 7, 1973, Timothy D. Lillis filed his answer to plaintiff's second amended petition.

On October 23, 1974, plaintiff took the deposition of L. E. Riller, M.D. Prior to the examination of Doctor Riller, counsel for plaintiff recited for the record: "Let the record show that the deposition of Dr. L. E. Riller is being taken pursuant to a notice to take depositions * * *, that service of notice was made by Deborah Reithmeyer upon attorney Walter K. Disney, Attorney for Defendant, by mail on October 14, 1974, with the deposition scheduled by notice to be taken in the office of Dr. Riller, * * the 23rd day of October, 1974, at 4:00 o'clock p. m., that it is now 4:25 p. m., and neither the Defendant nor the attorney for Defendant have appeared pursuant to this notice, and have, in fact, upon inquiry advised that we proceed with the deposition without their appearance." Defendant's after-trial motion for judgment acknowledges service of the notice on counsel.

On March 19, 1975, a jury was waived and the case was tried to the court. Plaintiff and defendant Timothy D. Lillis were present and represented by counsel. Doctor Riller's deposition was admitted in evidence over objection that defendant had no proper guardian ad litem when it was taken.

On July 3, 1975, the court entered judgment in favor of plaintiff in sum $1,500 against defendant Timothy D. Lillis and discharged defendant James P. Lillis.

In support of his contention appellant asserts: that the appointment of James P. Lillis as guardian ad litem for defendant failed because James P. Lillis never accepted the appointment; that the service of the second amended petition failed because it was not served on defendant by summons or upon any guardian ad litem or attorney representing the guardian ad litem; that the use of defendant's deposition was erroneous because discovery could not proceed until a proper guardian ad litem was ap-

pointed; that the deposition of Doctor Riller was a nullity as evidence because there was no proper notice; that although the original petition was properly served on the minor defendant, the subsequent service of the amended petition on counsel was a nullity, and all discovery was a nullity because Section 507.190, RSMo 1969, mandates that a case against a minor shall not proceed until a guardian ad litem has been appointed and qualified.

Section 507.190, *supra,* provides that after commencement of a suit against a minor, and the service of process upon him, the suit shall not be further prosecuted until a guardian ad litem for the infant be appointed. See also Rule 52.02, V.A.M.R. If the minor defendant is fourteen years of age or older, the minor may request in writing the appointment of a particular person and the court shall appoint such person upon such written request and the written consent to serve of the proposed guardian ad litem. Rule 52.02(f), V.A.M.R. If a minor over fourteen years of age neglects to secure appointment of a guardian ad litem, the court shall appoint some competent person as guardian ad litem for the minor, and in such case there is no provision for consent. Rule 52.02(g), V.A.M.R.

■ In this case the minor defendant was over fourteen years of age. He neglected to secure a guardian ad litem, and the court appointed the minor's father to act as guardian ad litem. Although appellant suggests a conflict of interest, he makes no showing that his father was not a suitable and competent person to act as guardian ad litem. The appointment was thus in accord with the provisions of Rule 52.02, *supra.*

■ The minor defendant's guardian ad litem was appointed May 10, 1972, and the appointment was in effect at the taking of Doctor Riller's deposition October 23, 1974. The defendant became of age prior to trial, at which time the need and authority of his guardian ad litem terminated. *State ex rel. Hill v. Davis,* 488 S.W.2d 305, 310 (Mo.App.

1972). He proceeded to trial on plaintiff's second amended petition and his answer with counsel and without objection. Such circumstances constituted a waiver with respect to any questions going to service of the second amended petition and notice of the taking of Doctor Riller's deposition,[1] and presentation of his defense. *Benz v. Phillips Pipe Line Co.,* 47 S.W.2d 170 (Mo. App.1932).

Accordingly, it may not be said that the judgment is void for any of the reasons advanced under appellant's first contention.

Appellant contends also that plaintiff was contributorily negligent as a matter of law on the theory that when a person voluntarily and unnecessarily places himself in a dangerous situation, fully knowing and realizing the danger and hazard to which he is exposing himself, he is guilty of contributory negligence as a matter of law. See, e. g., *Dempsey v. Horton,* 337 Mo. 379, 84 S.W.2d 621, 626 (1935); *State ex rel. Schaffer v. Allen,* 253 S.W. 768 (Mo.1923); *White v. Barkovitz,* 254 S.W.2d 291 (Mo.App.1953).

Appellant would have the foregoing theory applied to foreclose plaintiff on a hypothesis as follows: "The Respondent testified that he was aware of the heavy traffic upon Main Street; that he attempted to cross Main Street about sixty (60) feet south of the crosswalk located at Fiftieth and Main; that he could see north and south on Main for traffic, and, in fact, stood in the roadway waiting for traffic to clear. Appellant, called as Respondent's witness in chief, stated that he entered his auto and did not see Respondent as he then backed up about six (6) feet, waited for northbound traffic to clear, and as his auto rolled downhill (north) about six (6) feet, the middle of his auto hood struck Respondent's left hand and hip, not knocking Respondent off his feet. At the time of collision, Appellant placed Respondent standing about eight (8) feet into Main (near the left rear fender of the auto parked in front of him), near the west edge of the parking lane. Respondent saw Appellant prior to impact because the collision between Appellant's auto and Respondent was to the left hand of Respondent as the arm was extended toward Appellant; therefore, there was never any obstruction which would or could have caused [sic] Respondent from seeing Appellant prior or to Respondent stepping out in the street."

The evidence also warrants reasonable minds to accept a hypothesis as follows: Plaintiff parked his car in a Milgram Store parking lot and walked west from his car to Main Street and proceeded to cross Main Street at the north entrance to Milgram's parking lot, a point where pedestrians customarily cross Main Street. There was no crosswalk at 50th Street, the closest intersecting street. Prior to stepping into Main Street plaintiff looked to the south and saw no cars in the northbound half of the street. He proceeded to cross the northbound lanes of Main Street. At a point about three feet from the center line, he stopped and looked to the north for southbound traffic, and was struck by a vehicle driven by defendant Timothy D. Lillis. Defendant had been parked at the east curb of Main Street when plaintiff started across Main Street. In leaving the curb, he drove his vehicle forward (north) while looking to the rear and to the south. He did not see plaintiff until too late to stop and may already have hit him before seeing him. Plaintiff was struck on the left side and whirled around. He sustained injuries to his left hip, left shoulder and torso, for which he had medical treatment, X rays, medicines, and therapy.

Whether by looking south before entering Main Street, under the circumstances in evidence, plaintiff discharged his duty to exercise ordinary care for his own safety, or whether he was bound to look again as he crossed the northbound traffic lanes, were questions for the trier of fact and not for resolution as a matter of law. *Walsh v. Southtown Motors Co.,* 445 S.W.2d 342 (Mo.1969). The law does not say how often such a pedestrian must look, or how

---

1. The transcript omits information with respect to the taking of defendant's deposition.

far, or when or from where. If, for example, he looks as he starts to cross, and the way is clear, he is not bound as a matter of law to look again. *Knapp v. Barrett,* 216 N.Y. 226, 230, 110 N.E. 428. His duty to look to the south a second or third time was relative rather than absolute, *Romandel v. Kansas City Public Serv. Co.,* 254 S.W.2d 585, 591[10] (Mo.1953); and he is not required to look for danger when there is no cause to anticipate danger, *Williamson v. St. Louis Public Serv. Co.,* 363 Mo. 508, 252 S.W.2d 295, 299[5–8] (1952). This case falls within the general rule that where a pedestrian, intending to cross a street, looks and sees no automobile approaching and is injured during his crossing, the question whether in the exercise of ordinary care he should have continued to look for approaching traffic as he proceeded across the street is for the jury. *Walsh v. Southtown Motors, supra.*

■ That plaintiff was crossing the street at other than a regular crossing is a circumstance to be considered on the question of contributory negligence, but it alone does not bar recovery. *Hicks v. DeLuxe Cab Co.,* 189 S.W.2d 152, 155 (Mo.App.1945); *Pitcher v. Schoch,* 345 Mo. 1184, 139 S.W.2d 463, 466 (1940).

Judgment affirmed.

All concur.