OPINION OF THE COURT
Thomas J. Lowery, J.
The claimant, Theophane A. Merrill, while visiting the New York State Fair, sustained personal injuries when he was struck by an automobile as he was returning to his car which had been parked on the grassy median of Interstate Route 690. Separate claims seeking to recover damages against the State of New York were thereafter timely filed by Theophane A. Merrill and his wife, Virginia Merrill.[1] *261 The claimants assert that the accident was occasioned by the negligence of the State of New York in allowing automobiles to be parked on the median without taking adequate precautions to protect pedestrians againt vehicular traffic.
FACTUAL BACKGROUND
On September 3, 1977, the claimants, both deaf mutes, together with their two daughters, ages 10 and 14 years, left their home in Rochester, New York, to visit the New York State Fair in Syracuse, New York. Mr. Merrill drove the family car via the Thruway to Interstate Route 690 and proceeded east towards the fairgrounds. They reached their destination about 1:30 p.m. Upon arrival, the parking lots were filled to capacity and State troopers were observed directing traffic. When the claimants reached a point near the fairgrounds exit, they encountered an automobile stopped on the highway and a State trooper was observed conversing with its operator. Thereafter, the trooper approached the claimants’ vehicle and motioned them to follow the preceding car. Mr. Merrill did as directed and followed the other vehicle onto the median of Interstate Route 690. Both vehicles then parked.
In this area, Interstate Route 690 was a controlled access highway, with three eastbound and two westbound lanes. A grassy median divided the opposing lanes of traffic. The highway was generally level and straight. A wire fence had been erected south of the eastbound lanes. There were no sidewalks or paths provided for pedestrian traffic along the route. There were no street lights in the area and no signs or other traffic control devices were posted that gave warning to motorists of the presence of pedestrians. The maximum allowable speed was 55 miles per hour.
In order to reach the fairgrounds, visitors parking in the median would be required to cross the eastbound lanes of Interstate Route 690. Having crossed the lanes of travel, a visitor would immediatély come upon the fence adjoining the south side of the highway. At this point, he could either walk along the highway until he reached the exit ramp, or pass through an opening in -the fence.
*262 After the Merrill family had parked their car, they proceeded across the eastbound lanes of the expressway. Upon reaching the other side, they followed other pedestrians through a hole that had been cut in the wire fence. From this point, they walked a very short distance to where they found an entrance to the fairgrounds. They entered the fair and remained until approximately midnight that day.
At midnight, the claimants were advised by their two daughters that the fair was about to close. After consulting a trooper for directions, they proceeded through the midway, across a parking lot and back to the fence adjoining the highway. They could not, however, find the hole through which they had previously passed. They then climbed over the fence and walked onto the highway. They crossed back over the eastbound lanes of Interstate Route 690 to the median and began searching for their automobile. The weather was clear, but due to the absence of street lights, it was pitch dark. The troopers that had been previously directing traffic were now gone.
The Merrill family first proceeded west along the median of the road. They then realized that their automobile was parked in the other direction. They turned around and proceeded east, walking single file along the yellow line that delineated the northerly edge of the eastbound lanes of the highway. Theophane A. Merrill was walking approximately eight to nine feet in front of the other members of his family. All had their backs facing eastbound traffic.
At about this time, Michael Sullivan, accompanied by his wife, Cheryl, drove his vehicle onto Interstate Route 690 from the Fairmount Interchange. He had worked at the fair until 11:00 p.m. on September 3, 1977 and had driven the company van to his employer’s place of business in Fairmount, New York, and was returning to Dewitt, New York, to do some company banking. He was admittedly tired. When he reached Interstate Route 690 from the interchange on September 4, 1977, it was approximately 1:00 a.m. Upon entering Interstate Route 690, he proceeded east at a speed of 50 to 55 miles per hour in the lane closest to the median. He observed no speed reduction *263 signs[2] or other signs warning of pedestrians in the area. Despite the fact that the roadway was dark, he had his headlights on low beam. There was no traffic in the area. When he reached a point opposite the fairgrounds, he suddenly observed the Merrill family 50 to 65 feet ahead of him. He attempted to pull his vehicle to the right. His efforts were to no avail and the left side of his vehicle struck the claimant, Theophane A. Merrill, avulsing a portion of his right arm and causing him other serious injuries.
It is apparent from the fact that only the claimant, Theophane A. Merrill, was struck, that he was walking slightly to the right of his family at the time. This would place him to the right of the yellow line on the traveled portion of the road. This was somewhat confirmed by the investigating officer, who observed debris on the traveled way.
LIABILITY
There is no question that numerous vehicles were parked along Route 690 on September 3, 1977. This was clearly depicted by photographic evidence. It is likewise clear from the evidence that the State had knowledge of this condition. Aside from the fact that the claimants were specifically directed to park their vehicle on the median, State troopers were stationed on Route 690 directing traffic, while others were patrolling the area in troop cars and a police helicopter. In addition, State troopers had received specific instructions not to tow away vehicles parked along the highway. Moreover, permitting traffic to park along the highway was not unique to the 1977 fair, but was allowed for many previous years.
The use of a State expressway for the parking of automobiles created an unreasonably dangerous condition. This was particularly so after dark. Certainly, such use presented a foreseeable risk of injury to pedestrians who were required to use the highway to retrieve their vehicles. Under the circumstances, the State had a landowner’s duty either to abate the condition, or to take reasonable mea *264 sures to protect pedestrians from being struck by high-speed motorists. (See Basso v Miller, 40 NY2d 233; Scurti v City of New York, 40 NY2d 433; Madigan v State of New York, 97 Misc 2d 1015, affd 73 AD2d 1031, mot for lv to app den 49 NY2d 705; see, also, Drake v State of New York, 97 Misc 2d 1015, affd 75 AD2d 1016, 1017, mot for lv to app den 51 NY2d 702.) Instead, it chose to do nothing. Pedestrians returning to their vehicles were left to their own devices and were forced to travel on an unregulated, unlighted expressway, where they were exposed to traffic. In sum, the court finds that the State’s conduct constituted negligence.
The State seeks to avoid liability by asserting that the sole proximate cause of this accident was the negligence of the claimant, Theophane A. Merrill, or the acts of third parties, or a combination of both. The court disagrees. The State’s permitting motorists to park along Interstate Route 690, coupled with its failure to abate the condition, control pedestrian traffic, or warn motorists of the potential presence of pedestrian traffic on its highways, was a substantial factor in the happening of this accident.
The responsibility for the accident, however, must be shared by the claimant, Theophane A. Merrill. This cannot, however, be attributed to any violation of the Vehicle and Traffic Law. The general prohibition against parking on the median of an interstate highway (Vehicle and Traffic Law, § 1202, subd 1, pars i, j) is not applicable here, since the claimant, Theophane A. Merrill, did so at the direction of a police officer. Implicit in the police officer’s direction to park was a further direction permitting pedestrians to walk on Interstate Route 690, thus making the provision prohibiting pedestrian traffic on an interstate highway also inapplicable. (Vehicle and Traffic Law, § 1229-a.) Finally, the general provision regulating pedestrians walking on a roadway (Vehicle and Traffic Law, § 1156, subd [b]) was also not violated. In this regard, the statute provides, in relevant part: “Where sidewalks are not provided any pedestrian walking along and upon a highway shall when practicable walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction. Upon the approach of *265 any vehicle from the opposite direction, such pedestrian shall move as far to the left as is practicable.” (Italics supplied.) It was not practicable for the claim to comply with this statute. To do so would have required the claimant to walk on the north side of the westbound lanes. Hence, the claimant, Theophane A. Merrill, would have been forced to expose himself to the additional danger of crossing and then recrossing the unregulated westbound lanes of traffic, as well, in order to reach his automobile parked on the median.
Notwithstanding, the claimant, Theophane A. Merrill, violated a pedestrian’s duty to exercise that degree of care that a reasonably prudent person would utilize for his protection under the circumstances. (See Rossman v La Grega, 28 NY2d 300; Knapp v Barrett, 216 NY 226.) It was not reasonable for him to walk on the traveled portion of the highway with his back towards traffic, when he could have just as easily walked along the shoulder of the road or on the median. Therefore, the court finds that the claimant’s conduct constituted negligence, and this also contributed to the happening of the accident.
Although Theophane A. Merrill’s negligence concurred with the State’s in causing the accident, his negligence was slight and played only a small part in the series of transactions leading to the happening of the accident. Under the circumstances, any damages hereinafter found to have been sustained by the claimant, Theophane A. Merrill, will be reduced by 10%, that being his culpable share of responsibility. (CPLR art 14-A.) Likewise, any damages hereinafter found to have been sustained by the claimant, Virginia Merrill, in her derivative claim, will likewise be diminished 10%. (See Abbate v Big V Supermarkets, 95 Misc 2d 483; Meyer v State of New York, 92 Misc 2d 996.)
DAMAGES[3]
Theophane A. Merrill — Claim for Personal Injuries:
The court finds that the claimant, Theophane A. Merrill, has been damaged in the sum of $633,096.83 ($600,000 compensatory damages; $33,096.83 special damages). This *266 sum must be reduced by his pro rata share of culpability (CPLR 1411). Therefore, damages are found in the sum of $569,537.15.
Virginia Merrill — Derivative Claim Arising from Husband’s Injuries:
The court finds that the claimant, Virginia Merrill, has been damaged in the sum of $75,000, exclusive of any damages that may have resulted from Theophane A. Merrill’s failure to provide support. This sum, however, must be reduced by Theophane A. Merrill’s pro rata share of culpability (10%). Therefore, damages found in the sum of $67,500.

Effect of Consideration Paid to Claimants by Released TortFeasors:

Counsel for the claimants introduced into evidence a settlement agreement and release executed by the claimants in favor of Michael T. Sullivan, his wife Cheryl, and Michael T. Sullivan’s employer. The settlement agreement provided for payment of the sum of $153,000 to both Theophane A. Merrill and his wife, Virginia Merrill. No apportionment of the settlement proceeds was made as to each of the separate causes of action (i.e., Theophane A. Merrill’s personal injury action and Virginia Merrill’s derivative action for loss of consortium). The settlement agreement provided that the sum was to be paid in monthly installments over a period of years and in the event of Theophane A. Merrill’s demise in the interim, the balance would be payable to his estate.
Before consideration can be given to CPLR 4533-b, and section 15-108 of the General Obligations Law, the court must first resolve the question as to what apportionment, if any, should be made of the settlement proceeds. In this regard, it is noted that each of the claimants had a distinct and separate cause of action, notwithstanding the fact that Virginia Merrill’s action may have been derivative of nature. Each gave up something of value for the consideration paid. It appears, however, from a reading of the settlement agreement, that neither claimant considered their interest in the settlement proceeds to be equal. This *267 is gleaned from the fact that in the event that Theophane A. Merrill should die before the payments are complete, the balance of the payments would be payable to his estate. It appears then that the most practicable and reasonable way to apportion the settlement proceeds would be to do so in proportion to the damages found herein to have been sustained by the respective claimants. (See Hager v Hutchins, 91 Misc 2d 402.) Since Virginia Merrill’s damages were 11.8% of the total damages found for Theophane A. Merrill, the settlement proceeds will be apportioned accordingly. Hence, of the total settlement proceeds of $153,000, the sum of $18,054 will be assigned to Virginia Merrill and the sum of $134,946 will be assigned to Theophane A. Merrill.
Whether the damages found to have been sustained by Theophane A. Merrill and Virginia Merrill should be reduced to the extent of their respective settlements, or in a greater amount, will depend upon a determination of the released tort-feasors’ (Sullivan et al.) equitable share of Theophane A. Merrill’s and Virginia Merrill’s damages under CPLR article 14. (CPLR 4533-b; General Obligations Law, § 15-108.) If the latter is determined to be greater than the amount paid in settlement, then the damages found will be reduced by the released tort-feasors’ equitable share. (General Obligations Law, § 15-108.)
In determining the relative culpability of the State and the released tort-feasors, the latter will be considered one entity, since any negligence on the part of the owner of the vehicle or the employer is dependent on the negligence found to have been committed by Michael Sullivan, the alleged active tort-feasor.
With respect to Mr. Sullivan, it was his duty as a motorist to keep a reasonably vigilant lookout for pedestrians, to sound his horn when a reasonably prudent person would do so to warn a pedestrian of danger, and to operate his vehicle with reasonable care to avoid colliding with a pedestrian on the roadway. (Waterfall v Taylor, 35 AD2d 619; Hogeboom v Protts, 30 AD2d 618; Vehicle and Traffic Law, § 1154.) This he failed to do. His failure to see the Merrill family until he was 50 to 65 feet from them is inexcusable. His view was unobstructed and Interstate *268 Route 690 was straight for at least one-half mile west of the point where the accident occurred. If he had been keeping a reasonably vigilant lookout, he would have seen them. This, coupled with the fact that he was admittedly tired, chose to operate his vehicle in the median lane at close to the maximum allowable speed, and had the headlights of his vehicle on low beam, constituted negligence and such was also a proximate cause of the accident.
Weighing all of the facts and circumstances, the court finds the equitable share of culpability of Mr. Sullivan to be 20% and the State to be 80%. When applying Mr. Sullivan’s equitable share to the damages found, it is apparent that the amount of the settlement apportioned to each claimant exceeds Mr. Sullivan’s equitable share. Therefore, the damages found for the claimant, Theophane A. Merrill, in the sum of $569,787.15, will be reduced by the sum of $134,946, and the damages found for the claimant, Virginia Merrill, in the sum of $67,500, will be reduced by $18,054.
AWARD
In accordance with the foregoing decision, the claimant, Theophane A. Merrill, is awarded the sum of $434,841.15, and the claimant, Virginia Merrill, is awarded the sum of $49,446 for all damages sustained as a result of the accident of September 4, 1977.

. Theophane A. Merrill and Virginia Merrill brought separate actions in State Supreme Court against Michael Sullivan (operator) and Cheryl Sullivan (owner) of the motor vehicle involved in this accident, as well as Michael Sullivan’s employer, Walter T. White Inc. These actions were settled and a settlement agreement and general release was executed by the claimants herein. The consideration for such release was the sum of $153,000. Of this sum, $108,000 was paid to Theophane A. Merrill and Virginia Merrill (no allocation) and the balance was paid to their attorneys.

. Although evidence was introduced that the State had posted “35 MPH” speed signs, it was established that none would be encountered by motorists traveling east on Interstate Route 690 from the Pairmount Interchange.

. The explanation of the injuries sustained and the damages incurred have been deleted for publication purposes.