■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEX DAVIS, Appellant.—Appeal from a judgment of the Supreme Court, New York County (Carol Berkman, J.), rendered on September 3, 1987, convicting defendant, following his plea of guilty, of robbery in the second degree and sentencing him, as a youthful offender, to five years' probation, and a resentence of said court, rendered on February 17, 1988, finding him guilty of violation of probation and sentencing him to a term of imprisonment of from 1 to 3 years, is held in abeyance pending the remand for a hearing in connection with the appeal from the judgment of February 23, 1988.

Appeal from a judgment of the Supreme Court, New York County (Rena Uviller, J.), rendered on February 23, 1988, convicting defendant, following a jury trial, of attempted robbery in the second degree and sentencing him to a term of imprisonment of from 2 to 6 years to run consecutively to his prior sentence, is held in abeyance and the matter remanded for a hearing in accordance with this memorandum opinion.

Defendant's first conviction arose out of a gang mugging on West 32nd Street in Manhattan during which the victim restrained defendant until the arrival of the police. Defendant was thereafter convicted, following his plea of guilty, of robbery in the second degree and adjudicated a youthful offender. Although he initially received a sentence of five years' probation, he was subsequently resentenced to a term of imprisonment of from 1 to 3 years after he was apprehended in the course of another gang mugging on 39th Street. In the latter incident, defendant and three or four other youths, who had been following and taunting the complainant, Richard Enoch,

jumped and attempted to rob him. Although two police officers, riding in an unmarked vehicle (a yellow cab), had observed the perpetrators tailing Enoch and decided to follow the group on foot, they did not witness the actual attempted robbery. As Enoch approached a construction site at which he was employed, the youths grabbed him, but they scattered when his co-workers came to his assistance. Defendant ran right into the arms of one of the approaching police officers and was handcuffed and placed in the back of the police car. Two of Enoch's co-workers identified defendant as one of the men who had jumped the complainant; the victim himself did not make an identification.

Prior to defendant's trial, he moved to suppress his postarrest statements on the ground that *Miranda* warnings had not been provided or only partially given. The court granted the motion with respect to both statements involved, and defendant proceeded to trial, at the conclusion of which he was found guilty of attempted robbery in the second degree. As a consequence of his conviction, he was then determined to have violated the terms of his probation with respect to the earlier case and received a prison sentence. On appeal, defendant now contends that he was denied his right to a fair trial when the court refused his request to expand the *Huntley* hearing to include issues of probable cause and identification. In that regard, it appears that the failure to move promptly for a hearing on these matters was due to the fact that at a preliminary motion conference, the Assistant District Attorney, apparently looking at the file from defendant's previous conviction, stated that she did not believe that there was a *Wade* question since the co-workers had detained defendant until the police arrived. In reality, the crime took place out of the sight of the police, and defendant was only caught as he ran around the corner and into the officer's arms. However, after receiving *Rosario* material and, thus, being in possession of new information, his attorney unsuccessfully endeavored to challenge the identification of his client and the probable cause to arrest him.

The People urge that defendant waived his right to a *Dunaway/Wade* hearing, claiming that despite the District Attorney's inadvertent misrepresentation, his lawyer was advised through the voluntary disclosure form that the prosecution intended to introduce evidence of a showup identification but still did not initially request such a hearing. Yet, an examination of the record indicates that counsel made repeated efforts to obtain a *Dunaway/Wade* hearing. Clearly,

the circumstances surrounding defendant's arrest warranted that a hearing be conducted if he so desired, a fact which the court belatedly recognized during the trial when she permitted defendant's lawyer to question the identifying witnesses and one of the police officers, in the midst of their testimony out of the jury's presence, concerning certain details of the showup identification and then found that the police acted properly in stopping and detaining defendant while they investigated further. However, counsel's limited interrogation of a number of the witnesses out of the jury's presence hardly constitutes an acceptable substitute for a formal hearing. A full and fair hearing would have allowed a thorough exploration of not merely the suggestiveness of the showup but the adequacy of the probable cause to arrest defendant. Certainly, defendant's attorney was not accorded the opportunity to present his own evidence, to attempt to discredit the People's witnesses by demonstrating possible inconsistencies in their accounts and to argue in depth the various issues involved. Moreover, it is conceivable, even probable, that counsel's questioning of the witnesses at a hearing would have been very different, both in form and extent, from what it was during the abbreviated, noncontinuous inquiry which was conducted in the midst of defendant's trial out of the jury's presence. As the Court of Appeals observed in *People v Giles* (73 NY2d 666, 671), in another case where defendant's suppression motion was denied without a hearing: "It was this ruling by the hearing court and not a failure of proof by the People that resulted in evidence of the legality of the stop and search remaining undeveloped—evidence perhaps not strategically useful to be advanced at trial or even inadmissible as irrelevant or prejudicial at trial before a jury * * *. It should not be foreclosed forever. Thus, in these circumstances, the People should not be penalized by use against them of a possibly truncated evidentiary submission at trial, and they should be entitled to the one evidentiary suppression hearing which should then form the basis for the decision on the merits of the issues relevant in that procedural context."

Defendant is similarly entitled to no less than one full hearing on the relevant issues. Since the court made a fact finding derived from an inadequate "hearing", apparently improperly buttressed by evidence admitted at the trial itself *(see, People v James,* 67 NY2d 662), that finding was simply not based upon a complete analysis of the facts and law. Consequently, defendant's appeal should be held in abeyance pending remand for a *Dunaway/Wade* hearing. Concur—Murphy, P. J., Milonas, Ellerin and Rubin, JJ.

Kupferman, J., dissents in a memorandum as follows: Once again, we have an example of an undue burden on the criminal justice system. *(Cf., People v Mosley,* 136 AD2d 500, 501 [dissent]; *People v Rivera,* 144 AD2d 258, 261 [dissent].)*

Fortuitously, the complainant was rescued by his co-workers at his worksite and two of them testified at the trial. There was really no identification issue. Yet, the Trial Judge, out of excessive caution, permitted defendant's lawyer, during the trial and out of the presence of the jury, to inquire concerning the so-called showup identification.

To state that the defendant is entitled to "one full hearing" is to mandate yet another rung in the seemingly endless ladder when the proof of guilt is overwhelming.

I would affirm.