■ MARNA THOMA, Appellant, v SANDOR RONAI, Respondent.—Order, Supreme Court, New York County (Charles E. Ramos, J.), entered July 15, 1991, which denied plaintiff's motion for summary judgment, affirmed, without costs.

Although defendant did not dispute plaintiff's averment that she was lawfully in the crosswalk when he struck her with his van as he turned left, summary judgment was prop-

erly denied since a failure to yield the right of way does not ipso facto settle the question of whether the other party was herself guilty of negligence *(see, Schmidt v Flickinger Co.,* 88 AD2d 1068, *appeal withdrawn* 58 NY2d 655; *Pecora v Marique,* 273 App Div 705). Nor was plaintiff necessarily entitled to summary judgment merely because defendant's proof was placed before the court by way of an attorney's affirmation referring to plaintiff's affidavit and defendant's deposition testimony rather than by affidavit based on personal knowledge *(see, Olan v Farrell Lines,* 64 NY2d 1092; *Tibak v City of New York,* 154 AD2d 313, *lv denied* 75 NY2d 705).

Justice Kupferman accurately relates defendant's deposition testimony that plaintiff was walking uptown and that his van made contact with her right side, but he neglects to mention plaintiff's contrary averments in her verified complaint and her affidavit in support of her motion for summary judgment that she was crossing East 79th Street in a southerly direction and was struck on her left side. The police accident report also states that plaintiff sustained injuries to her left arm and leg. This is significant because, if the facts were as stated by the plaintiff, and she had looked to her left while crossing, she almost certainly would have seen defendant's van turning left on East 79th Street from First Avenue and might have avoided the accident. Her comparative negligence may be found by a jury to be minimal, or even zero, but the record does not support our finding a total absence of comparative negligence as a matter of law *(Schmidt v Flickinger Co., supra).* " 'A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger *(Barker* v. *Savage,* 45 N. Y. 191). The law does not say how often he must look, or precisely how far, or when or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again * * * If he has used his eyes, and has miscalculated the danger, he may still be free from fault *(Buhrens* v. *Dry Dock, E. B. & B. R. R. Co.,* 53 Hun, 571; 125 N. Y. 702). But it is a very different thing to say that he is not bound to look at all. We have repeatedly held that one who crosses a city street without any exercise of his faculty of sight, is negligent as a matter of law [citations omitted]. To escape the consequences of such negligence, he must prove that even if he had looked, the accident would still have happened.' " *(Pecora v Marique, supra,* at 707-708, quoting *Knapp v Barrett,* 216 NY 226, 230; *see also, Counihan v Werbelovsky's Sons,* 5 AD2d 80, 83; 7 NY Jur 2d, Automobiles,

§ 401; 6B Warren, New York Negligence, Pedestrian Struck by Motor Vehicle, § 18.02 [3d ed]; Annotation, *Liability for Collision of Automobile With Pedestrian At Intersection as Affected by Reliance Upon or Disregard of Stop-and-Go Signal,* 2 ALR3d 155, 195-200, § 8.)

Plaintiff stated the following in her affidavit in support of her summary judgment motion: "I had waited on the Northeast corner of the intersection for the light to change, so I could proceed in a Southerly direction and cross East 79th Street to the Southwest corner of the intersection * * * When the light changed to green and the pedestrian sign said walk, I proceeded at a normal pace, South in the crosswalk. When I reached the center of East 79th Street, still in the crosswalk, I was struck on my left side. *I did not see what struck me at the time,* nor do I know how long I was unconscious after I was knocked to the pavement."

As demonstrated *supra,* the law is clear that plaintiff had a duty to use her eyes to protect herself from danger, and that her failure to look would constitute negligence. In the particular circumstances presented herein, plaintiff's concession that she did not see the van that struck her is sufficient to raise a factual question as to whether she exercised reasonable care to protect herself from danger while crossing the intersection. Our conclusion that summary judgment was properly denied by the Supreme Court does not rest on "unsupported speculation," as stated by Justice Milonas, but rather on the parties' descriptions of the accident evaluated in the light of common experience. Concur—Sullivan, J. P., Carro and Ross, JJ. Milonas and Kupferman, JJ., dissent in separate memoranda as follows:

Milonas, J. (dissenting).

In my opinion, the order being appealed should be reversed and summary judgment granted to plaintiff.

The law is established that an affirmation by counsel unaccompanied by evidentiary support is insufficient to defeat a motion for summary judgment *(Zuckerman v City of New York,* 49 NY2d 557). The cases cited by the majority, *Olan v Farrell Lines* (64 NY2d 1092) and *Tibak v City of New York,* (154 AD2d 313, *lv denied* 75 NY2d 705), do not hold to the contrary since in both of those matters the attorney's affidavit or affirmation had attached to it proof of the position being urged therein.

In the present situation, however, the verified answer and demand submitted by defendant's lawyer is entirely unsupple-

mented by any evidentiary matter corroborating counsel's speculation that it should be assumed that plaintiff could have seen the car coming and that she should have taken some action to avoid being hit, this for no other reason than because she was in the crosswalk notwithstanding that she might have had the right of way. The accident report, which states that the driver claimed that he struck the pedestrian while making a left turn and didn't see her, tends to confirm plaintiff's account. Defendant, in his deposition, also does not in any way contradict plaintiff's assertion that she was lawfully crossing the street at a normal pace in accordance with the traffic signal when she was struck by a 1987 Chevrolet van, owned and operated by defendant, as it was making a left hand turn. Indeed, considering that defendant admitted to police that he failed to notice the pedestrian, any statement in his deposition that might serve to undermine plaintiff's description of the direction in which she was walking prior to being hit could of necessity amount to no more than a subsequent self-serving fabrication. Except for the unsubstantiated conjecture by defendant's attorney that plaintiff somehow was, or could have been, negligent or careless, yet without specifying precisely what it was that she might have done wrong, the record is devoid of any evidence that creates even a semblance of an unresolved question of fact warranting a trial.

It should, moreover, be noted that the answer filed by defendant's counsel is no more than a form document that contains such a ludicrous first affirmative defense as the following: "If plaintiff(s) is operator or passenger in a motor vehicle, and if it be determined that plaintiff(s) failed to use available seat belts, defendant(s) pleads said fact in mitigation of damages", yet, it is undisputed that plaintiff was a pedestrian. The majority herein, based simply on the theorizing by defendant's lawyer that plaintiff might have been able to escape being hit by defendant's vehicle, have concluded that summary judgment was properly denied "since a failure to yield the right of way does not ipso facto settle the question of whether the other party was herself guilty of negligence". The effect of this approach is to treat unsupported speculation indistinguishably from real evidence even where, as herein, there is absolutely no mention of what plaintiff actually did or might have done to avoid the accident. Consequently, whenever a pedestrian is struck by a vehicle in a crosswalk, the majority, in effect, holds that summary judgment should as a matter of course be unavailable despite the lack of any proof whatsoever that the pedestrian contributed in any way to the

accident. A requirement has now been imposed that a pedestrian has an affirmative duty to look in every direction all at once and then allege compliance with that mandate since, by neglecting to "use her eyes" as specified by the majority, a pedestrian may be deemed responsible for contributing to the accident notwithstanding the actual circumstances surrounding the incident.

Kupferman, J. (dissenting).

I would reverse and grant summary judgment to the plaintiff and remand for an assessment of damages.

This Court by denying summary judgment imposes an undue burden on the tort system (cf., People v Davis, 169 AD2d 379, 382 [Kupferman, J., dissenting]).

In fact, it could be an example for the management study committee appointed by Chief Judge Sol Wachtler to study court efficiency (see, NYLJ, Oct. 6, 1992, at 1, col 5). Moreover, to my knowledge no member of this Court wears tasseled loafers.

The plaintiff was crossing 79th Street with the light and in the crosswalk when struck by a van owned and operated by the defendant, which was turning from First Avenue left into 79th Street.

The opposition affidavit is not by the defendant, but by an attorney who, of course, has no firsthand knowledge of the situation (see, Zuckerman v City of New York, 49 NY2d 557).

To see the value of the attorney's affidavit, one may merely note that in this pedestrian accident an affirmative defense asserted that the plaintiff-pedestrian was not wearing a seat belt.

So, in order to get an idea what the case is about, we turn to the deposition of the defendant.

He states that his partner was riding with him, but we have no affidavit from the partner either. He further states that when he made the turn he was driving at about five miles per hour and when he saw the plaintiff he applied the brakes, so that, as he says, he could not have been going more than two miles per hour. He does not dispute that he made contact with her. His van hit her on her right side. She was walking uptown to cross 79th Street and he had been driving uptown on First Avenue when he turned left into 79th Street.

Based on defendant's own statements, the liability is clear.