OPINION OF THE COURT
Jack M. Battaglia, J.
At approximately 9:27 a.m. on July 21, 2008, plaintiff’s decedent, Ira Shenkerman, was struck by a bus at the intersection of Coney Island Avenue and Avenue R in Brooklyn; on *498 January 29, 2009, Ms. Shenkerman allegedly died as a result of the injuries she sustained in the July accident. The bus that struck Ms. Shenkerman was owned by defendant Omega Express Ltd. and operated by defendant Julio C. Goycoechea (the Omega defendants). As of July 21, 2008, defendant Dora Mikhlin was a home attendant, employed by defendant Project O.H.R., Inc. and assigned to provide personal care services to Ms. Shenkerman.
Plaintiff Roman Shenkerman, the son of the decedent and administrator of her estate, commenced this action on January 19, 2010 with a verified complaint alleging causes of action, based in negligence, for “conscious pain and suffering on the part of decedent Ira Shenkerman” and for the “wrongful death of Ira Shenkerman.” With this motion, plaintiff seeks an order, pursuant to CPLR 3212, granting him “partial Summary Judgment on the issue of liability” against all defendants.
“A party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, producing sufficient evidence to demonstrate the absence of any material issue of fact.” (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003].) “Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution.” (Id.) “For purposes of summary judgment, the opposing party’s version of the facts must be accepted and viewed in the a [sic] light most favorable to them.” (Schaffe v SimmsParris, 82 AD3d 867, 867 [2d Dept 2011].)
To the extent plaintiff’s motion seeks summary judgment against defendants Project O.H.R. and Dora Mikhlin, it is more easily resolved. Plaintiffs claim against them is based upon alleged negligence in “permitting] Ira Shenkerman to be outdoors and to cross the subject street alone.” (See affirmation in support 1i 18.) In support of the claim, plaintiff submits his affidavit, in which he asserts that his mother was “legally blind,” and that “the home attendant was to provide total assistance to her while she was outdoors,” including “walking outside and crossing the street.” (Affidavit of Roman Shenkerman 1Í 3.) Plaintiff also submits six documents: three Nurse’s Assessment Visit Reports dated, respectively, December 1, 1998, November 7, 2003, and April 14, 2008; a Nurse’s Supervisory Visit Report dated November 7, 2003; a Plan of Care dated July 15, 2008; and an undated document designated Personnel Poli *499 cíes and Practices for Home Attendant Employees, with an addendum headed Home Attendant Holidays 2010.
Plaintiff does not describe the legal relationship between his mother and Project O.H.R. or Dora Mikhlin, contractual or otherwise; does not describe the source or nature of duty either or both of those defendants owed to Ms. Shenkerman; does not offer case law authority, if any, articulating the standard of care owed to Ms. Shenkerman, or address whether the standard of care can be determined without an expert; and does not describe the source of the proffered documents, otherwise authenticate them, or render them admissible as evidence on this motion.
Assuming that the Personnel Policies and Practices for Home Attendant Employees can establish an applicable standard of care, plaintiff offers no admissible evidence that the proffered document was in effect on July 21, 2008. In any event, the document states on page 9 under Scheduled Work Hours, “Assignments of more than five hours per day must begin by 10 am.” Even though it appears from the (inadmissible) Reports that services were provided in excess of an average of more than five hours per day, Ms. Shenkerman was struck by the bus at approximately 9:27 a.m.
Assuming that defendants Project O.H.R. and Mikhlin owed the duty to supervise Ms. Shenkerman as plaintiff alleges, there is no admissible evidence that the duty was owed at approximately 9:27 a.m. on July 21, 2008.
Plaintiff fails to establish prima facie that he is entitled to judgment as a matter of law against either defendant Project O.H.R. or Dora Mikhlin, and it is unnecessary to consider the opposition papers of those defendants (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
In support of his motion against defendants Omega Express and Julio C. Goycoechea, plaintiff submits a certified copy of the police accident report (see CPLR 4518 [c]); a notice to admit and defendants’ response to notice to admit; and the affidavits of two nonparty witnesses to the accident, Linda Vecchione and Sofya Beckerman.
With this evidence in admissible form, plaintiff establishes, at least prima facie, that, before she was struck by a bus owned by Omega and operated by Goycoechea, Ms. Shenkerman was stopped on the southwest corner of the intersection of Coney Island Avenue and Avenue R, facing a red light; the bus was *500 westbound, on Avenue R, facing a red light; the light turned green for traffic on Avenue R; Ms. Shenkerman was presented with a “walk” signal in her favor; Ms. Shenkerman was crossing in the crosswalk from the southwest corner to the southeast corner of Coney Island Avenue when the bus turned from Avenue R into southbound Coney Island Avenue and struck Ms. Shenkerman.
Sofya Beckerman was eastbound on Avenue R, facing the red light, observing the “large tour bus on Avenue R facing west” and the “elderly lady with a shopping cart” on the southwest corner (affidavit of Sofya Beckerman 1HI 2, 3). When the light changed to green, “the tour bus accelerated quickly and made a fast left turn”; “the bus driver was looking toward his right side rather than forward and the direction that his bus was proceeding”; “[t]he bus never slowed down from the time that the light turned green up to the time that the bus driver hit the elderly woman”; “[tjhere was nothing that obstructed the bus driver’s view of the elderly woman who was crossing the street in the crosswalk with the light in her favor.” (Id. 1111 5, 7.)
Linda Vecchione was a passenger on the bus, “in a seat behind the Omega bus driver which faced the direction of the driver”; her view of the roadway was unobstructed. (Affidavit of Linda Vecchione lilf 4, 5.) Her account is similar to that of Ms. Becker-man’s but she adds, “At no time did the driver slow down, sound his horn or attempt to stop prior to hitting the pedestrian in the crosswalk.” (Id. 1i 10.)
According to the police accident report, defendant Goycoechea stated to the investigating officer that “he did not see the pedestrian in crosswalk.”
As will appear more fully below, with this evidence plaintiff establishes prima facie that defendant Goycoechea was negligent, and that his negligence was a substantial factor in causing the bus to strike Ms. Shenkerman. By statute and city regulation, Ms. Shenkerman was given the right-of-way, and defendant Goycoechea was required to yield to her while she was walking in the crosswalk. (See Vehicle and Traffic Law § 1111 [a]; § 1112 [a]; § 1642 [a]; Rules of City of NY Dept of Transp [34 RCNY] § 4-02 [e]; § 4-03 [a]; § 4-03 [c].)
The Omega defendants contend, however, that such proof is insufficient to satisfy plaintiff’s burden on this motion unless, in addition, plaintiff establishes prima facie that Ms. Shenkerman was not also at fault. These defendants contend specifically that plaintiff has failed to make the required prima facie show *501 ing because he fails “to submit any evidence that Ira Shenkerman looked ahead and to her left before she began crossing the street immediately before the subject accident happened,” noting that “conspicuously absent” from the nonparty witness affidavits “is the issue regarding whether Ira Shenkerman looked ahead and to her left before she began to cross the street” (affirmation in opposition 1f 14); and arguing that “[h]ad Ira Shenkerman looked ahead and to her left before she began to cross the street, she would have seen the bus turning in her direction and would have stopped before crossing the street into its path” {id. 11 22).
The First and Second Departments have recently recognized a conflict in their respective opinions addressing the plaintiffs burden on its motion for summary judgment on liability in a motor vehicle case. In Tselebis v Ryder Truck Rental, Inc. (72 AD3d 198 [1st Dept 2010]), an action involving a two-vehicle accident at an intersection controlled by a traffic light, the First Department held that a plaintiff “is entitled to summary judgment on liability despite the fact that his own negligence might remain an open question” {see id. at 200). The court stated that opinions that “suggest that freedom from comparative negligence is a required component of a plaintiffs prima facie showing on a motion for summary judgment” “cannot be reconciled” with the comparative fault provisions of CPLR 1411 and 1412. {See id. at 200-201.) One Second Department opinion is cited among those disapproved. (See id. at 200, citing Cator v Filipe, 47 AD3d 664 [2d Dept 2008].)
In Roman v A1 Limousine, Inc. (76 AD3d 552 [2d Dept 2010]), a memorandum opinion that recites no facts, the Second Department expressly disagrees with Tselebis and declines to follow it {see id. at 553). The court relies upon the Court of Appeals decision in Thoma v Ronai (82 NY2d 736 [1993]), which affirmed a First Department order denying the plaintiffs motion for summary judgment (189 AD2d 635 [1st Dept 1993]). There, a pedestrian knockdown in a crosswalk, the plaintiff submitted in support of her motion her own affidavit, stating that she did not “observe” the vehicle that struck her {see id. at 637). The Court of Appeals affirmed because the plaintiffs “concession that she did not observe the vehicle that struck her raises a factual question of her reasonable care,” and, therefore, she “did not satisfy her burden of demonstrating the absence of any material issue of fact.” (See 82 NY2d at 737.)
Subsequent decisions in the First and Second Departments have adhered to their respective stated positions (see e.g. Chang *502 Hoon Lee v Kew Gardens Sung Shin Refm. Church of N.Y., 84 AD3d 1299 [2d Dept 2011]; Gonzalez v ARC Interior Constr., 83 AD3d 418 [1st Dept 2011]). In any event,1 this court is required to follow Second Department authority unless and until the Court of Appeals decides otherwise. (See Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984].)
Discerning that authority, however, in the case of a pedestrian knockdown in a crosswalk where the pedestrian has the right-of-way is not a simple matter. The Vehicle and Traffic Law contains three sections that explicitly address the respective rights and obligations of motorists and pedestrians within crosswalks: section 1111 where traffic control signals are present; section 1112 where pedestrian-control signals are present; and section 1151 where traffic-control signals are not in place or not in operation. The Vehicle and Traffic Law permits cities having a population in excess of one million to put local regulatory provisions in place that “shall supersede the [Vehicle and Traffic Law] provisions . . . where inconsistent or in conflict with respect to . . . enumerated subjects,” including “[r]ight of way of vehicles and pedestrians.” (Vehicle and Traffic Law § 1642 [a] [10].) Pursuant to this authority, New York City has adopted regulatory provisions as counterparts to Vehicle and Traffic Law §§ 1112 and 1151, but not section 1111. (See Rules of City of NY Dept of Transp [34 RCNY] § 4-02 [e].)
The statutory and city regulatory provisions are uniform in providing that a pedestrian walking in a crosswalk has the right-of-way, and any motorist is required to yield, so long as any traffic-control or pedestrian-control signal is in the pedestrian’s favor. (See Vehicle and Traffic Law § 1111 [a]; § 1112 [a]; § 1151 [a]; Rules of City of NY Dept of Transp [34 RCNY] § 4-03 [a], [c]; § 4-04 [b].) Indeed, where a pedestrian is given the right-of-way by statute or regulation, it is reversible error not to so charge the jury explicitly. (See Applebaum v Hersh, 26 AD2d 58, 60-61 [1st Dept 1966]; see also Grisoff v Nicoletta, 107 AD2d 1047, 1048-1049 [4th Dept 1985].)
The only statutory or regulatory provisions that expressly limit the pedestrian’s right-of-way are found in the provisions that address places where there are no traffic-control or pedestrian-control signals in place. Vehicle and Traffic Law §1151 (b) states, “No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield.” The corresponding city regulation is the same, except that *503 “impossible” is substituted for “impractical.” (See 34 RCNY 4-04 [b] [2].)
Indeed, in Rudolf v Kahn (4 AD3d 408 [2d Dept 2004]), the Second Department held that Vehicle and Traffic Law §§ 1111 and 1151 “impose different rights and duties on the drivers and pedestrians” (see id. at 409), and that charging section 1151, containing the express limitation on the pedestrian’s right-of-way, where section 1111 was applicable was a fundamental error requiring a new trial (see id. at 409-410). The error was so fundamental that the plaintiff succeeded in a legal malpractice action against the law firm that had failed to request a charge based on section 1111, and failed to object to the charge given. (See Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer, 8 NY3d 438 [2007].)
Nonetheless, in a recent Second Department decision the limitation of section 1151 is reflected where the case was governed by section 1111. (See Barbieri v Vokoun, 72 AD3d 853 [2d Dept 2010].) Holding that the motorist’s failure to yield to a pedestrian in the crosswalk with a light in her favor was negligence per se, the court noted, without explicit reference to section 1151, “[n]or is there any evidence to support a view that the 77-year old plaintiff, pushing a shopping cart containing at least one filled bag, darted off the sidewalk so suddenly and without warning that the defendant could not have avoided the collision in the exercise of due care.” (See id. at 855-856.) There is no such evidence in this case either.
Even where Vehicle and Traffic Law § 1151 or its city counterpart does not apply, however, the principles of comparative fault still apply. “[A] failure to yield the right of way does not ipso facto settle the question of whether the other party was herself guilty of negligence.” (See Thoma v Ronai, 189 AD2d at 635-636.) “The right of way is not a right to self-inflicted mayhem for which the defendant can be held liable, and one cannot, to the exclusion of everyone and everything around him, rely solely upon his right of way.” (Schmidt v Flickinger Co., 88 AD2d 1068, 1069 [3d Dept 1982].)
The issue here is not whether, in a pedestrian knockdown case where the pedestrian had the right-of-way, comparative fault applies, but whether the pedestrian must also make a showing as to lack of comparative fault in order to succeed on a motion for summary judgment against the motorist. That question must be considered in the light of CPLR 1412, providing that comparative fault “shall be an affirmative defense to be *504 pleaded and proved by the party asserting the defense.” Interestingly, the Second Department in Roman v A1 Limousine, Inc. (76 AD3d at 553), declining to follow the First Department in Tselebis v Ryder Truck Rental, Inc. (72 AD3d at 200-201), addresses CPLR 1411 but not CPLR 1412, also relied upon by the First Department.
There is no clear Second Department authority that, in a case governed by Vehicle and Traffic Law §§ 1111 or 1112, or both, the pedestrian/plaintiff must make a showing as to lack of comparative fault to carry his or her prima facie burden on summary judgment. In Yuen Lum v Wallace (70 AD3d 1013 [2d Dept 2010]), relied upon by the Omega defendants, the Second Department held that “[ujnder the circumstances of this case, the plaintiff failed to establish, as a matter of law, that he was free from comparative negligence, as he failed to state in his initial affidavit that he entered the crosswalk where the accident occurred with reasonable care,” also ruling that the motion court should not have considered the plaintiffs reply affidavit “in which he stated that prior to crossing he looked left and right, and saw no vehicle coming” (see id. at 1014 [emphasis added]). No further facts are stated, so it does not appear whether Vehicle and Traffic Law §§1111 or 1112, on the one hand, or Vehicle and Traffic Law § 1151 on the other, was applicable.
In a case like Thoma v Ronai (82 NY2d 736 [1993]), the Second Department held that the plaintiff failed to meet her prima facie burden since “the plaintiff testified at her deposition that she had not looked to her left or right crossing the street,” creating a “triable issue of fact . . . as to her comparative negligence.” (See Cator v Filipe, 47 AD3d 664, 664-665 [2008]; see also Albert v Klein, 15 AD3d 509, 510 [2d Dept 2005] [no explicit reference to crosswalk or statute or regulation].)
There is Second Department authority that, without any evidence of having looked left or right while crossing, the pedestrian who is struck in a crosswalk with a traffic-control or pedestrian-control signal in his or her favor makes a prima facie showing with that evidence, particularly where, as here, there is also evidence of the motorist’s admission that he or she did not see the pedestrian before impact or some other fault. (See Klee v Americas Best Bottling Co., Inc., 60 AD3d 911 [2d Dept 2009] [Vehicle and Traffic Law § 1112 (a) cited]; Benedikt v Certified Lbr. Corp., 60 AD3d 798 [2d Dept 2009]; Cavitch v Mateo, 58 AD3d 592, 593 [2d Dept 2009] [Vehicle and Traffic Law § 1151 *505 (a) cited]; Voskin v Lemel, 52 AD3d 503 [2d Dept 2008]; Jermin v APA Truck Leasing Co., 237 AD2d 255 [2d Dept 1997]; Zabusky v Cochran, 234 AD2d 542, 542 [2d Dept 1996]; see also Pire v Otero, 123 AD2d 611, 612 [2d Dept 1986] [Vehicle and Traffic Law § 1111 (a) cited on postverdict motion].)
Of particular interest is Yi Min Feng v Jin Won Oh (71 AD3d 879 [2d Dept 2010]), where the court held that the plaintiff established, as a matter of law, that the defendant driver violated Vehicle and Traffic Law § 1112 (a) with evidence that she “had a ‘walk’ sign in her favor, was within the crosswalk, and was about one-third of the way across the street when she was struck on her left side by the defendant’s vehicle as it was making a legal left turn” (see id. at 879-880). The court held further that the motion court “properly concluded that there was a triable issue of fact as to whether the plaintiff was comparatively negligent in light of the evidence that she did not look to her left as she crossed the street,” and the motion court “properly referred the issue of comparative negligence for trial.” (See id. at 880.)
Finally as to pertinent Second Department authority, there are decisions in which the court held that the pedestrian/ plaintiff had established prima facie entitlement to judgment as a matter of law with evidence that the defendant failed to yield the right-of-way in the crosswalk, together with evidence that the plaintiff looked before entering the crosswalk or otherwise acted with due care. (See Kusz v New York City Tr. Auth., 88 AD3d 768 [2d Dept 2011]; Martinez v Kreychmar, 84 AD3d 1037, 1038 [2d Dept 2011]; Lariviere v New York City Tr. Auth., 82 AD3d 1165, 1166 [2d Dept 2011], citing 34 RCNY 4-03 [a]; Qamar v Kanarek, 82 AD3d 860, 861 [2d Dept 2011]; Sulaiman v Thomas, 54 AD3d 751, 752 [2d Dept 2008], citing 34 RCNY 4-03 [a]; 4-04 [d]; Hoey v City of New York, 28 AD3d 717, 717 [2d Dept 2006].)
But to say that something is sufficient is not the same as saying that it is necessary. There is nothing in the case law that notes the pedestrian’s showing of reasonable care, or lack thereof, that addresses evidence of additional negligence of the motorist, such as an admission that he or she did not see the pedestrian before impact, or that addresses evidence that the pedestrian’s failure to look was not a substantial factor in causing the impact because looking would not have made a difference. Particularly in light of Roman v A1 Limousine, Inc. (76 AD3d 552 [2010]), it must be accepted as the general rule that, *506 in motor vehicle collision cases, including pedestrian knockdowns, the plaintiff seeking summary judgment on liability must include a showing of lack of comparative fault. But in light of the statutory right-of-way, unlimited at controlled intersections, and the statutory imposition of the burden of proof on comparative fault on the defendant, the case law also requires that the general rule yield to the particular circumstances.
The court concludes that plaintiff here has made a prima facie showing that he is entitled to judgment as a matter of law. Particularly in light of the admissible evidence that defendant Goycoechea did not see Ms. Shenkerman, and the sworn statements of the nonparty witnesses as to the movement of the bus, affirmative evidence that Ms. Shenkerman looked to her left before entering the crosswalk is not necessary to plaintiff’s prima facie showing on this motion. The nonparty statements as to the movement of the bus are evidence that, even if Ms. Shenkerman had looked, it would not have made a difference. Indeed, the Omega defendants’ contention that, because of her visual impairment, Ms. Shenkerman was negligent in crossing streets without assistance assumes that looking would not have avoided the accident.
Concerning the Omega defendants’ contention about Ms. Shenkerman’s being out-and-about without assistance, there is nothing in the case law to suggest that, even if there might be cognizable comparative fault on such grounds, a showing on the question is part of the plaintiffs burden in a case such as this. Whatever the authority on the plaintiffs need to make a look- and-see showing, there is nothing to suggest a requirement of any showing of fault not immediate to the conduct of the pedestrian and the motorist at the time and place of the occurrence.
In opposition, the Omega defendants do not raise a triable issue as to the driver’s violation of Vehicle and Traffic Law § 1111 (a) and city traffic regulation section 4-03 (c), the counterpart to Vehicle and Traffic Law § 1112 (a). “Conspicuously absent,” to use defendants’ counsel’s phrase (see affirmation in opposition 1Í14) is any affidavit by Mr. Goycoechea. Nor do defendants raise a triable issue as to Ms. Shenkerman’s failure to look. Any evidence from Mr. Goycoechea on this point would, in any event, contradict his statement tó the investigating officer that he did not see Ms. Shenkerman before the bus struck her. There is no evidence that Mr. Goycoechea had activated his left-turn directional signal while he was waiting at the light, or otherwise signaled before he made his left turn.
*507 As to the Omega defendants’ alternate contention that, because of her poor vision, Ms. Shenkerman was negligent in crossing streets without assistance, plaintiffs own submission includes his assertion that his mother was “legally blind” (affidavit of Roman Shenkerman H 3); and his claim against defendants Project O.H.R. and Dora Mikhlin necessarily includes the assumption that, without assistance when she was struck by the bus, her poor vision contributed to her injury.
“[0]ne who is blind or whose eyesight is impaired is not thereby deprived of the right to use the public highways and . . . in venturing onto them he does not do so at his peril.” (Shields v Consolidated Gas Co. of N.Y., 193 App Div 86, 90 [1st Dept 1920].) “He is only bound in so doing to exercise the care and caution that a person of ordinary prudence who is blind or whose eyesight is so impaired would have exercised under the circumstances.” (Id. at 90.) “He must be more cautious” and “must bring about him greater guards, and go more slowly and tentatively than if he had his eyesight.” (Harris v Uebelhoer, 75 NY 169, 175 [1878].)
In support of their opposition, the Omega defendants proffer several documents that are stated to be from defendant Project O.H.R., as well as the transcript of plaintiffs examination before trial. The transcript is in proper evidentiary form, containing both the reporter’s certification and plaintiffs signature, but defendants point to no testimony that adds appreciably to plaintiffs assertion that his mother was “legally blind.” The other documents, like those proffered by plaintiff, are not authenticated, or otherwise rendered admissible as evidence.
In light of the plaintiff’s own showing on this motion, and that discovery has not been completed, including the depositions of defendants Project O.H.R., Inc. and Dora Mikhlin, the motion is premature. (See CPLR 3212 [f].)
Plaintiffs motion is granted to the extent that the Omega defendants are determined to have been negligent in the operation of the bus that struck plaintiffs decedent on July 21, 2008, and that their negligence was a substantial factor in bringing about the accident; the motion is otherwise denied, and any question of comparative fault of plaintiffs decedent related to her visual impairment is referred for trial. (See CPLR 3212 [e]; Yi Min Feng v Jin Won Oh, 71 AD3d at 880.)