■ MARIE CASTIGLIONE et al., Appellants, v ROBERT KRUSE et al., Respondents. [15 NYS3d 360]—

In an action to recover damages for personal injuries, etc., the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Suffolk County (Mayer, J.), dated July 11, 2014, as denied their motion for summary judgment on the issue of liability.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and the plaintiffs' motion for summary judgment on the issue of liability is granted.

On October 19, 2011, at approximately 6:40 a.m., Marie Castiglione (hereinafter the injured plaintiff), was walking southbound across Montauk Highway near its intersection with Keith Lane in West Islip, when she was struck by the defendants' vehicle, which was making a left turn from Keith Lane to proceed eastbound on Montauk Highway. The injured plaintiff, and her husband suing derivatively, commenced this action against the defendants to recover damages for personal injuries and loss of consortium, respectively. The plaintiffs moved for summary judgment on the issue of liability, and the defendants cross-moved for summary judgment on the issue of liability. The Supreme Court denied the motion and cross motion.

The plaintiffs established their prima facie entitlement to judgment as a matter of law on the issue of liability (see Vehicle and Traffic Law § 1152 [a]; Garcia v Lenox Hill Florist III, Inc., 120 AD3d 1296 [2014]; Brown v Mackiewicz, 120 AD3d 1172 [2014]; Hamilton v King Tung Kong, 93 AD3d 821 [2012]; see also Moreira v M.K. Travel & Transp., Inc., 106 AD3d 965 [2013]). The deposition testimony of the injured plaintiff and a nonparty witness established that prior to entering the roadway, the injured plaintiff waited for the traffic light controlling the east-west traffic on Montauk Highway to turn red, then looked to her left and right, and, seeing no cars, started to walk southbound across Montauk Highway. The testimony further established that the injured plaintiff traversed the westbound left-turn lane, and while in the eastbound lane of

Montauk Highway, having almost completed crossing, was struck by the defendants' vehicle, which had turned left from Keith Lane to proceed east on Montauk Highway. Significantly, this testimony established that, prior to the impact, Karen Kruse (hereinafter the defendant driver), started her approach to the point of impact from behind and to the right of the injured plaintiff, that is, from behind the injured plaintiff's right shoulder and out of her view. The defendant driver conceded in her deposition testimony that she did not see the injured plaintiff prior to impact, despite the fact, established by her own testimony, that the injured plaintiff was generally in front of her prior to the impact. Under these circumstances, the plaintiffs established that the defendant driver was negligent and that the injured plaintiff was free from comparative fault.

In opposition to the plaintiffs' prima facie showing, the defendants failed to raise a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The defendants' unsupported speculation that the injured plaintiff was comparatively at fault was insufficient to raise a triable issue of fact (*see Garcia v Lenox Hill Florist III, Inc.*, 120 AD3d at 1297; *Hamilton v King Tung Kong*, 93 AD3d 821 [2012]; *Sulaiman v Thomas*, 54 AD3d 751, 752 [2008]).

The cases relied upon by our dissenting colleague are each factually distinguishable from the instant case, in various respects. The three cases share one important distinguishing fact: the vehicles in all three cases were coming from a direction generally in front of the injured plaintiff before the impact with the injured plaintiff occurred. Here, the defendants' vehicle was coming from a direction which was largely behind the injured plaintiff, and to her right, prior to the impact. This important fact, in addition to other facts present in this case, demonstrated that the injured plaintiff was free from comparative fault in the happening of the accident.

In *Yi Min Feng v Jin Won Oh* (71 AD3d 879 [2010]), the plaintiff pedestrian was only one third of the way into the intersection when she was struck on her left side by the defendant's vehicle, which was making a turn. The plaintiff did not look to her left either before or while she was crossing the street and she was struck by a vehicle coming from in front of her. In the instant case, the injured plaintiff looked both ways before crossing, traversed almost two lanes of traffic, and had almost completed crossing when she was stuck by the defendants' vehicle, which started its approach from behind her.

In *Lopez v Garcia* (67 AD3d 558 [2009]), the Appellate Divi-

sion, First Department, found that there were triable issues of fact as to the plaintiff's comparative fault because (1) the plaintiff's affidavit indicated that she did not see the defendants' vehicle prior to being struck, (2) the police accident report indicated that a witness observed that the plaintiff never looked before walking into the roadway, and (3) the defendant's affidavit stated that after he made a left turn, he saw the plaintiff run into the front passenger bumper of his vehicle. *Lopez* is distinguishable from the instant case because the plaintiff in *Lopez* failed to see a vehicle which was coming from in front of her, while here, the injured plaintiff did not see the defendants' vehicle, which was coming from behind her. Additionally, the witness in *Lopez* indicated that the injured plaintiff never looked when walking into the roadway, whereas here, the witness indicated that the injured plaintiff looked both ways before entering the roadway. Here, there is no evidence to contradict the injured plaintiff's proof that she looked both ways prior to entering the unmarked crosswalk. Moreover, in *Lopez*, the defendant actually saw the plaintiff run into his vehicle, unlike here, where the defendant never saw the injured plaintiff prior to impact, and indeed, did not know that she had struck a person until after the impact.

In *Thoma v Ronai* (189 AD2d 635 [1993], *affd* 82 NY2d 736 [1993]), the plaintiff was crossing south on East 79th Street in Manhattan, and was halfway through the intersection when she was struck on her left side by the defendant's van, which was turning left onto 79th Street from First Avenue. In her affidavit, the plaintiff averred that she waited at the intersection for the light to change, and when the light changed and the pedestrian signal flashed "walk," she began to walk south in the crosswalk. When she reached the center of the crosswalk she was struck on her left side, but did not see what struck her. The defendant's van came from in front of the plaintiff, not behind her. The Appellate Division, First Department, affirmed an order denying the plaintiff's motion for summary judgment, finding that there was an issue of fact as to whether the plaintiff was comparatively at fault. The Court stated that "the law is clear that plaintiff had a duty to use her eyes to protect herself from danger, and that her failure to look would constitute negligence" (189 AD2d at 637).

Here, the evidence demonstrated that once the traffic light changed in favor of the injured plaintiff, she looked in both directions before crossing, unlike the plaintiff in *Thoma*, who failed to look at all. Although the injured plaintiff here stated that while she was crossing she was looking straight ahead,

she had almost completed crossing when she was struck by the defendants' vehicle, which originated its approach from behind her while making a left turn. Although our dissenting colleague contends that we have misapprehended the facts and that the defendant's vehicle had completed its left turn and was traveling straight to reach the unmarked crosswalk where the injured plaintiff was walking, the dissent's version of the facts does not comport with the defendant driver's sworn statement on the day of the incident in which she stated that she "started to make [her] left turn and felt an impact," and the defendant driver's deposition testimony that when the impact with the injured plaintiff occurred, her vehicle had not yet completed the turn. The dissent's determination that the defendant driver had already completed the turn at the point of impact also does not comport with the police accident report, which indicates that the injured plaintiff was struck by the driver side door of a vehicle at an angle approaching from behind and to the right of the injured plaintiff, or the affidavit of the nonparty witness who also indicated that the defendant driver's vehicle was making a left turn when it struck the injured plaintiff. The dissent's contrary assumption that the turn made by the defendant driver was a sharp left made perpendicular to the road into which she was turning is therefore not supported by the record. Accordingly, the facts and circumstances of this case are distinguishable from *Thoma*, and our holding here is not in contravention to the subsequent decision of the Court of Appeals in that case, which held that the plaintiff may have been negligent in failing to look to her left while crossing the intersection.

The defendants' remaining contention is raised for the first time on appeal and, therefore, is not properly before this Court (*see Pineda v Elias*, 125 AD3d 738, 739 [2015]).

Accordingly, the Supreme Court should have granted the plaintiffs' motion for summary judgment on the issue of liability. Skelos, J.P., Duffy and LaSalle, JJ., concur.

Dillon, J., dissents, and votes to affirm the order insofar as appealed from, with the following memorandum: There are three reasons why I disagree with the majority determination to reverse: (1) it misapprehends four separate factual aspects of the case that raise issues of comparative negligence, (2) it fails to correctly apply controlling precedent from the Court of Appeals as well as this Court, and (3) it effectively creates new law that has no basis in decisional authority. Each reason is discussed in turn.

The majority's first misapprehension involves the direction

of travel of the defendants' vehicle. Photographs of the intersection that are in the record irrefutably demonstrate that the intersection is more of a three-way intersection with Keith Lane, from which the defendant driver turned, being several yards to the west of the other three entry points. The photographs, which are as much a part of the record as any party's deposition testimony, demonstrate that the defendant driver necessarily completed or virtually completed her left turn from Keith Lane and traveled through the three-way portion of the intersection in order to then reach the unmarked crosswalk where the injured plaintiff was walking. Any suggestion that the defendants' vehicle was somehow "behind" the injured plaintiff at the time of the impact is a physical impossibility given the configuration of the photographed roadways. The accident could not therefore involve a vehicle traveling from behind the injured plaintiff, as the majority implies, but was necessarily more perpendicular to the injured plaintiff upon the car's approach from her side. With the defendants' vehicle's headlights pointing toward the unmarked crosswalk as it approached essentially from the injured plaintiff's side, the injured plaintiff must have been truly oblivious of her surroundings to have not seen the car at any time, as she admitted in her deposition testimony. Under these circumstances, a jury could easily and rationally assess to the injured plaintiff a percentage of comparative negligence, and this Court should not improperly usurp that fact-finding function.

The second fact misapprehended by the majority involves where the injured plaintiff was looking at relevant times. The majority notes that the injured plaintiff waited for the traffic light to be in her favor before leaving the curb to cross the highway. In doing so, however, the majority ignores the injured plaintiff's admission at her deposition that, as she crossed the lanes of travel, she failed to look to her sides and instead looked only ahead of her. The injured plaintiff's duty of care, even if vested with a right-of-way under Vehicle and Traffic Law §§ 1152 (a) and 110 (a), does not end when she leaves the curb but is, instead, a continuing one as she traversed across the three-lane roadway (*see Schmidt v Flickinger Co.*, 88 AD2d 1068, 1069 [1982]; *Counihan v Werbelovsky's Sons*, 5 AD2d 80, 83 [1957]). The Court of Appeals has held, under facts virtually identical to those here, that the award of summary judgment to a plaintiff in a pedestrian knockdown case is not appropriate where the plaintiff fails to look to the sides while in the process of crossing an intersection (*see Thoma v Ronai*, 82 NY2d 736 [1993]). This Court has also held—under almost identical facts of a plaintiff crossing a highway as the defend-

ant vehicle made a left turn at the intersection—that summary judgment was not appropriate where, as here, the injured plaintiff did not look to her sides while in the process of crossing (see *Yi Min Feng v Jin Won Oh*, 71 AD3d 879 [2010]). Here, the defendants' vehicle approached the injured plaintiff from her side.

The third fact misapprehended by the majority is the injured plaintiff's admission at her deposition that she never saw the defendants' oncoming vehicle before the accident, even though the vehicle approached her from the side with its headlights on. In *Lopez v Garcia* (67 AD3d 558 [2009]), another case involving a pedestrian knockdown while the defendant's vehicle turned into an intersection, there were triable issues of fact as to comparative negligence because the injured plaintiff stated in an affidavit that she did not see the defendant's vehicle before contact with it. Here, the injured plaintiff failed to see what was there to be seen through the proper use of her senses (see *Espiritu v Shuttle Express Coach, Inc.*, 115 AD3d 787 [2014]; *Brandt v Zahner*, 110 AD3d 752 [2013]; *Colpan v Allied Cent. Ambulette, Inc.*, 97 AD3d 776, 777 [2012]; *Topalis v Zwolski*, 76 AD3d 524, 525 [2010]; *Tapia v Royal Tours Serv., Inc.*, 67 AD3d 894, 896 [2009]).

The fourth fact misapprehended by the majority concerns the uncontested evidence that the injured plaintiff's point of impact with the defendants' vehicle was at the driver *side* door and *side* mirror. One can reasonably and logically infer from this testimony that the injured plaintiff walked into the side of the defendants' vehicle after it had already entered and was traveling beyond the intersection on Montauk Highway's eastbound lane. Such an inference is supported by the photographed configuration of the accident scene, requiring vehicles making left turns from Keith Lane onto Montauk Highway to negotiate the turn in order to then proceed to the general area where the accident occurred. Where plaintiff pedestrians have had impacts with the side of a passing vehicle, as here, many appellate decisions have upheld summary judgment and trial verdicts in favor of the defendant motorists, not the pedestrians, based partially or entirely upon the location of the contact with the side of the cars (see *Rogers v City of New York*, 52 AD3d 589 [2008]; *Carrasco v Monteforte*, 266 AD2d 330 [1999]; *Moskowitz v Israel*, 209 AD2d 676 [1994]; *Fieldy v Weimer*, 169 AD2d 961 [1991]). The point of the injured plaintiff's contact alone, aside from any other facts or evidence, dictates the denial of summary judgment to the plaintiffs, and at least raises a triable issue of fact for the jury as to her contributory fault.

Indeed, in awarding summary judgment on the issue of liability to a plaintiff pedestrian who struck the driver side of a moving vehicle, the majority fails to adhere to established New York jurisprudence. Clearly, the point of impact between the injured plaintiff and the defendants' vehicle raises a triable issue of fact as to the injured plaintiff's comparative fault in walking into the side of a passing vehicle while she, according to her deposition testimony, was singularly focused on what was straight ahead of her as she walked across a three-lane roadway, rather than being mindful of her broader surroundings.

In addition to the significant facts overlooked or misunderstood by the majority, the majority has misapplied controlling case law such as *Thoma, Yi Min Feng,* and *Lopez* by making distinctions that those cases did not involve vehicles approaching pedestrians from the rear. The majority's position in this regard is faulty for two reasons. First, the premise that the defendants' vehicle somehow approached from behind her is refuted by the uncontested configuration of the intersection, regardless of its point of initial origin. Second, the majority misconstrues *Thoma, Yi Min Feng,* and *Lopez,* as those cases were not determined by the direction of the cars involved but by the plaintiffs' failures to be aware of their surroundings on trafficked roadways.

In addition to overlooking crucial facts and ignoring controlling precedent, the majority, in my view, creates new law that is untenable. In essence, the majority holds that as long as a pedestrian looks both ways and steps off a curb with the traffic light in his or her favor, the pedestrian is relieved of any further duty of care while crossing multiple lanes of traffic on a dark and rainy morning, without need to ever look again left or right, and be oblivious to one's broader surroundings. That proposition is not now and never has been the law (*see Thoma v Ronai,* 82 NY2d at 736; *Yi Min Feng v Jin Won Oh,* 71 AD3d at 879; *Lopez v Garcia,* 67 AD3d 558 [2009]; *Schmidt v Flickinger Co.,* 88 AD2d at 1069; *Counihan v Werbelovsky's Sons,* 5 AD2d at 83). The majority also makes new law that pedestrians need not concern themselves with vehicles that make turns into intersections, so long as the vehicles initially originate from the rear of four potential entry points. In the area of pedestrian knockdown cases, the majority cannot reach the conclusion it reaches here without creating new law that violates clear and consistent appellate precedents that are to the contrary.

Accordingly, I respectfully dissent.